79 F.3d 1014
 Jimmy McCLENDON a/k/a Billy McClendon; Harold Lund; Peter
Sumatkak; David Michael Bauer; Carl Ray Lopez; Bruce
David Morawe; Thomas Young; Ruthie Duran; Deborah Lavera;
Janelle Roybal; Dannette Difiori; Maria Sisneros; Larry
Green; Bartel Haley; Michael Cote; Joe Ray Herrera;
Josie Kriena; Debbie Lucero; David Shawkin; Marc A.
Gillette; George Chavez; Eliseo Baca; Clint Barras;
Francisco Melendez; Samual Herrod; Vincent Padilla; Carl
Duckworth; Joseph W. Anderson; Paul Johnson; Fred Mall;
Hector Lopez; Ricky Rose; Herbert King, Sr.; James Parks;
Michael A. Johnson; Johnny Vallejos; Joe Newberry;
Darryl Craft; Albert Willy; William P. Jimmy;
Augustine Tapia; Richard A. Smith; Robert Lovato;
Roy Whatley; Marty Begay; Martin Valdivia; Tallie Thomas;
Augustine Jackson; Donald Hall; Carl Sur; Steve
Esquibel; Lonnie Whatley; James Saiz; Bryon Zamora;
Allen M. Sawyer; Patrick Benny Romero; Richard C. Kopecky;
Phillip Shumate; Nelson Romero; Steve Johnson; Bennie F.
Garcia; Louie Chavez; Brian Salazar; Richard Gallegos;
Larry Stroud; James Burks; Brad Fischer; Amihon Baca;
Jeff Dillow; Pete McQueen; Manuel Martinez; Arnold
Anthony Maestas; John Hewatt; and All Others Similarly
Situated, Plaintiffs-Appellees and Real Parties in Interest,
and
EM, RL, WA, DJ, PS and NW, on behalf of themselves and all
others similarly situated, Plaintiffs-Intervenors
and Real Parties in Interest,
and
Lawrence A. Johnson, Intervenor,
v.
CITY OF ALBUQUERQUE; Martin Chavez, Mayor of Albuquerque;
County Of Bernalillo; Patrick Baca, Bernalillo County
Commissioner; Albert Valdez, Bernalillo County
Commissioner; Eugene Gilbert, Bernalillo County
Commissioner; Barbara Seward, Bernalillo County
Commissioner; Jacquelyn Schaefer, Bernalillo County
Commissioner; Bill Dantis, Director, Bernalillo County
Detention Center; and Bernalillo County Detention Center;
Paul Sanchez; Frank Lovato; Ercell Griffin, Deputy
Director, BCDC; Michael Smith, Lieutenant; John Van
Sickler, Lieutenant; Will Bell, Officer; Albert Chavez,
Lieutenant; Richard Fusco, Lieutenant; George Fuentes;
David Baca, Lieutenant; Victor Hernandez; Kevin D. Sevir;
Jim Mason, Dr.; Barbara Cole; Maria Lucero; David
Royston; Felimon Martinez, Captain; Stanley Lents;
Douglas Robinson; Seal Barley; Lynn King; Dave Sherman;
Brian Maser; John Does, Employees of Bernalillo County
Detention Center, Defendants-Appellants, and Petitioners,
v.
The UNITED STATES DISTRICT COURT for the DISTRICT OF NEW
MEXICO, Respondent.
 Nos. 96-2056, 96-2057.
 United States Court of Appeals,
Tenth Circuit.
 April 2, 1996.
 
 Appeal From The United States District Court For The District Of New Mexico (D.C. No. 95-0024 MV/RLP); Martha Vazquez, Judge.
 
 
 1
 Jeffrey Baker, The Baker Law Firm, Albuquerque, New Mexico, for Defendants-Appellants and Petitioners.
 
 
 2
 Anthony Ayala, Albuquerque, New Mexico, for Plaintiffs-Appellees and Real Parties In Interest.
 
 
 3
 Peter Cubra, Albuquerque, New Mexico, for Plaintiffs-Intervenors-Appellees and Real Parties in Interest.
 
 
 4
 Before PAUL KELLY, Jr., Circuit Judge, In Chambers.
 
 
 5
 Defendants-Appellants and Petitioners seek an emergency stay pending appeal of the district court's order limiting their authority to independently select places of confinement for inmates. Covering all bases, they also seek a writ of prohibition against the district court enjoining the court from enforcing the condition. I find that the application for the stay is well taken and should be granted; although I have jurisdiction to consider the petition for an extraordinary writ, I will exercise my discretion to refer it to a panel of this court.
 
 Background
 
 6
 Defendants-Appellants and Petitioners are local governmental entities, elected officials and public employees in the State of New Mexico who operate and work at the Bernalillo County Detention Center (BCDC) located in Albuquerque, New Mexico. Plaintiffs-Appellees and Real Parties In Interest are a class of inmates who have been or will be confined at BCDC. See D. Ct. Order filed August 23, 1995 at 1 n.1 (doc. 106); Aplts./Pet. Emergency Request filed March 26, 1996, ex. 1; Complaint filed January 10, 1995 (doc.1). Plaintiffs-Intervenors-Appellees and Real Parties In Interest are a class of inmates with mental or developmental disabilities who have been or will be confined at BCDC.
 
 
 7
 Plaintiffs allege various constitutional violations regarding their conditions of confinement. On August 23, 1995, the district court granted a preliminary injunction to reduce the population of the BCDC based upon an unannounced visit by the district judge to the facility, which was followed by a one-day evidentiary hearing. D. Ct. Order filed August 23, 1995 at 2 (doc. 106). The district court ordered BCDC to reduce its inmate population according to a schedule of progressively decreasing population caps and imposed detailed conditions concerning day-to-day operations. Id. at 12-18. To achieve the population caps, the order required the City and County Defendants to implement a "Matrix Release System" (MRS) whereby inmates would be assigned a numerical score based on several factors, including any pending charges and prior convictions. Inmate counts were required at 4:00 a.m. each day and, based upon the numerical scores under the MRS, the Director of the facility was "authorized and directed to make the necessary releases from BCDC as required to enforce the population limits." Id. at 13. The district court's order was converted into a permanent injunction based upon a partial settlement agreement between the Plaintiffs and Defendants which reserved certain individual claims. Settlement Agreement and Order filed September 7, 1995 (docs. 115 & 116). Under the terms of the settlement agreement, the district court retained jurisdiction to enforce and modify the permanent injunction. Settlement Agreement filed September 7, 1995, p 1.B (doc. 115).
 
 
 8
 Both the preliminary injunction and settlement pleadings make it clear that the district court has not determined whether the operation of BCDC violates federal law. The district court reserved any ruling on whether a constitutional violation occurred:Defendants, by stipulating to the facts concerning overpopulation and by proposing administrative solutions, have not thereby waived, either directly or constructively, their rights to trial or proof of the alleged constitutional violations. The Court notes Defendants' position that overpopulation alone does not constitute a violation of the residents' constitutional rights, and that "overcrowding," if defined as simply population in excess of BCDC's design capacity has not resulted in any such violation. The Court leaves that issue for future resolution.
 
 
 9
 D. Ct. Order filed August 23, 1995 at 2 n.2 (doc. 106). The settlement agreement acknowledged "the fact that there is no finding of any constitutional violations." Settlement Agreement filed September 7, 1995 at 2, p 7 (doc. 115).
 
 
 10
 Although the MRS was utilized twice, Defendant City of Albuquerque then sought to avoid exceeding the population caps by housing inmates in other facilities. The alternative housing is to be temporary because additional capacity in the form of a new detention facility on the Westside of Albuquerque is scheduled to be operational on May 24, 1996, about sixty days hence. In the interim, Defendants advised the district court of plans to recommission Montessa Park (once the site of a detention facility) to house inmates temporarily. Plaintiffs and Plaintiffs-Intervenors objected. The district court then directed Defendants to advise opposing counsel of any plans to house inmates temporarily and allow opposing counsel to visit the proposed facilities. Clerk's Minutes of November 17, 1995 (doc. 144). Plaintiffs then sought a preliminary injunction enjoining the operation of the Montessa Park facility. Motion for a Preliminary Injunction filed November 20, 1995 (doc. 145). Defendants represent that the district judge visited the facility and approved it for temporarily housing inmates, although no ruling appears of record, nor does the district court docket sheet reflect a written disposition of the preliminary injunction request.
 
 
 11
 On Friday, March 22, 1996, the district court held a hearing in response to Defendant City of Albuquerque's notification that the population caps had not been met as of March 17. The district court held that certain defendants were in violation of the court's order by exceeding the population cap and by failing to release BCDC inmates in accordance with the MRS. Tr. at 82-83, attached as ex. 2 to Emergency Motion (No. 96-2056). The district judge, however, considered options to the MRS, including tents, the basement of a courthouse and Montessa Park, Tr. at 86, and then imposed the condition which is the subject of this appeal and the writ of prohibition:
 
 
 12
 Any proposed sites will be made available to opposing counsel so that they may have an opportunity to tour the facility,....
 
 
 13
 If there is a dispute as far as availability of any of these sites, counsel knows by now that all it takes is a phone call to get me there, and I am happy to tour any other facilities that may be used as an interim measure.
 
 
 14
 Tr. at 86. The district judge set the matter for further hearing on Monday, March 25, 1995, to check on the progress of the alternatives. Tr. at 87.
 
 
 15
 On March 25, Plaintiffs and Plaintiffs-Intervenors moved the district court to issue an order to show cause and hold Defendants in civil contempt. Though it does not appear of record, Plaintiffs represent that "on Sunday, March 24, 1996, the Court entered an Order restraining the Defendants from using the Montessa Park Warehouse to house inmates." Motion and Affidavit for Order to Show Cause and Other Relief filed March 25, 1996 at 1 (doc. 179). See also Aplts./Pet. Emergency Request filed March 26, 1996, ex. 3 (Tr. at 71) (district judge refers to "telephone hearing that we held on Sunday at approximately 1:00 p.m."). According to Plaintiffs, "[d]espite the directive of this Court, 103 inmates were housed over night at the Montessa Park Warehouse." Motion and Affidavit at 1 (doc. 179). In a hearing on March 25, the district court found that the Defendants had violated its order by exceeding the population cap, by housing inmates in locations which had not been previously approved by the district court after inspection by Plaintiffs' counsel, and by failing to implement the MRS. Aplts./Pet. Emergency Request, ex. 3 (Tr. 70). The district court ordered that the inmates housed at the Montessa Park facility be returned to BCDC and the MRS utilized. Id. at 71; Clerk's Minutes dated March 25, 1996 (doc. 180). The district court ordered Defendants to respond to the contempt motions by Wednesday, March 27 at noon.
 
 
 16
 On Tuesday afternoon, March 26, this emergency matter came before me as a single circuit judge. Defendants represented that on Monday night, after the district court hearing, inmates had been transported from temporary locations in Bernalillo County to other penal facilities around the state, including the state penitentiary in Santa Fe. The reason is obvious: if the inmates were returned to BCDC, the population cap would be exceeded and the MRS would require the release of 163 inmates. It does not appear that the temporary facilities utilized on Monday night were approved by the district judge after inspection by Plaintiffs' counsel.
 
 
 17
 Upon receipt of the Defendants' pleadings, I heard oral argument from the parties. The issue as framed by the Defendants is straightforward:
 
 
 18
 Does a District Judge, in the absence of any finding of any constitutional violations, have the authority to prohibit a local governmental entity from using facilities to house jail inmates, on even a temporary basis, until attorneys for the inmates have first inspected such facility, and until the District Judge herself has visited and approved such facility?
 
 
 19
 Aplts./Pet. Emergency Request at 5. Plaintiffs and Plaintiffs-Intervenors were furnished the Defendants' pleadings prior to the hearing, and although they did not have time to prepare a written response, they participated in the hearing and presented argument.
 
 Discussion
 A. Power to Consider an Extraordinary Writ
 
 20
 As an initial matter, it is necessary to consider the parallel proceedings before me. Defendants have filed a notice of appeal from the district court's supplementary injunctive orders under 28 U.S.C. § 1292(a)(1), and it is apparent that a single circuit judge may act on a stay pending appeal. Fed. R.App. P. 8(a); 10th Cir. R. 8.3. See also Fed.R.Civ.P. 62(g).
 
 
 21
 The more involved question is whether a single circuit judge may rule upon an extraordinary writ pursuant to 28 U.S.C. § 1651 and Fed. R.App. P. 21(a).
 
 Fed. R.App. P. 27(c) provides:
 
 22
 Power of a Single Judge to Entertain Motions. In addition to the authority expressly conferred by these rules or by law, a single judge of a court of appeals may entertain and may grant or deny any request for relief which under these rules may properly be sought by motion, except that a single judge may not dismiss or otherwise determine an appeal or other proceeding, and except that a court of appeals may provide by order or rule that any motion or class of motions must be acted upon by the court. The action of a single judge may be reviewed by the court.
 
 
 23
 10th Cir. R. 27.5.1 provides that "Pursuant to Fed. R.App. P. 27(c), one judge may make any necessary interlocutory order relating to any unassigned case or proceeding pending in this court, preparatory to its hearing or decision" and also specifies that a circuit judge may act upon various other types of applications. Plainly, 10th Cir. R. 27.5.1 does not specify that Fed. R.App. P. 21(a) applications "must be acted upon by the court," Fed. R. App. P. 27, although it is true that Rule 21(a) applications are not mentioned in 10th Cir. R. 27.5.1.
 
 
 24
 A long line of cases supports the power of a single circuit judge to act on an application for an extraordinary writ in emergency situations. See Arrow Transp. Co. v. Southern Ry. Co., 372 U.S. 658, 662 n. 4, 83 S.Ct. 984, 986 n. 4, 10 L.Ed.2d 52 (1963); Ojeda Rios v. Wigen, 863 F.2d 196, 199 (2d Cir.1988) (chambers opinion of Newman, J.); In re Clark, 861 F.2d 263, 1988 WL 105310, at * 2 (4th Cir. Oct. 4, 1988) (unpub. chambers opinion of Phillips, J.); Application of President & Directors of Georgetown College, Inc., 331 F.2d 1000, 1005-06 (D.C.Cir.) (chambers opinion of Wright, J.), reh'g en banc denied, 331 F.2d 1010 (D.C.Cir.), cert. denied, 377 U.S. 978, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964); Woods v. Wright, 8 Race Rel. L. Rep. 445 (5th Cir.1963) (chamber opinion of Tuttle, J.). Notwithstanding the power, discretion suggests that in most circumstances applications for extraordinary relief should be decided by a panel of judges. In describing a practice of having at least two circuit judges decide these matters, "except in an extreme emergency situation," the Eighth Circuit stated:
 
 
 25
 The object of the practice is to prevent any attempt at "shopping" as to such applications; to make the soundness of the action on the application more certain; and to avoid the public unseemliness of a single circuit judge setting up his judgment against that of another individual judge (district judge).
 
 
 26
 Aaron v. Cooper, 261 F.2d 97, 101 n. 1 (8th Cir.1958) (cited in Ojeda Rios, 863 F.2d at 199). Additionally, because I will grant relief in the stay matter, the emergency nature of the petition for the extraordinary writ is diminished. The petition for a writ of prohibition therefore will be referred to the Clerk for panel assignment.
 
 B. Stay Pending Appeal
 
 27
 10th Cir. R. 8.1 requires the applicant to address the following: "(a) the likelihood of success on appeal; (b) the threat of irreparable harm if the stay or injunction is not granted; (c) the absence of harm to opposing parties if the stay or injunction is granted; and (d) any risk of harm to the public interest." These factors require individualized consideration and assessment in each case. Hilton v. Braunskill, 481 U.S. 770, 776-77, 107 S.Ct. 2113, 2119-20, 95 L.Ed.2d 724 (1987); United States v. Various Tracts of Land in Muskogee and Cherokee Counties, 74 F.3d 197, 198 (10th Cir.1996). The Defendants' counsel has complied with 10th Cir. R. 8.2 which imposes additional requirements when emergency relief is sought. Relief has been sought at the earliest practicable time. Counsel also has complied with 10th Cir. R. 8.3 and has notified opposing counsel in accordance with the rule.
 
 
 28
 Fed. R.App. P. 8(a) requires that an application for a stay must ordinarily be made first in the district court.
 
 
 29
 A motion for such relief may be made to the court of appeals or to a judge thereof, but the motion shall show that application to the district court for the relief sought is not practicable, or that the district court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the district court for its action.
 
 
 30
 Fed. R.App. P. 8(a). Defendants' counsel has represented that the district court "failed to afford the [requested] relief," when he requested that the portion of the order concerning prior inspection and approval of facilities be modified. Aplts./Pet. Emergency Application at 5. Although it is the court's strong preference that a stay be sought first in the district court, the rule admits of exceptions, and under the circumstances, it would serve little purpose to require another application to the district court. Moreover, the district court's resolve is demonstrated by a briefing schedule and imminent hearing on civil contempt.
 
 1. Likelihood of Success on Appeal
 
 31
 If Defendants can meet the other requirements for a stay pending appeal, they will be deemed to have satisfied the likelihood of success on appeal element if they show "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." See Walmer v. United States Dep't of Defense, 52 F.3d 851, 854 (10th Cir.) (preliminary injunction context), cert.denied, --- U.S. ----, 116 S.Ct. 474, 133 L.Ed.2d 403 (1995); Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir.1980) (same). See also 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, Federal Practice and Procedure § 3954 (1995 Supp. at 706) ("serious legal questions"); Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir.1981) ("substantial case on the merits when a serious legal question is involved"). The purpose of a stay is to preserve the status quo pending appellate determination. See Lundgrin, 619 F.2d at 63; Continental Oil Co. v. Frontier Refining Co., 338 F.2d 780, 781 (10th Cir.1964).
 
 
 32
 Defendants have satisfied the above standards regardless of whether the district court's imposition of the condition in question is viewed as a modification of the permanent injunction concerning the population caps or a new preliminary injunction. Defendants have shown a likelihood of success on two alternative and independent grounds.
 
 
 33
 a. Compliance With Fed.R.Civ.P. 65(d)
 
 Fed. R.Civ. P. 65(d) provides:
 
 34
 Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.
 
 
 35
 The district court's oral ruling in this case does not appear to have been committed to writing in accordance with Rule 65(d). The Supreme Court has explained that this is not a mere technical requirement: "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." Schmidt v. Lessard, 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974) (per curiam). It has been held that "[o]ral statements are not injunctions," and that a defendant is under no judicial compulsion when an injunction is not recorded on a separate document in accordance with Rules 58 and 65(d). Bates v. Johnson, 901 F.2d 1424, 1427-28 (7th Cir.1990). Absent a written order with sufficient specificity, see B & C Truck Leasing, Inc. v. ICC, 283 F.2d 163, 167-68 (10th Cir.1960), there are serious questions concerning not only enforceability, but also appellate jurisdiction. See Burgess v. Ryan, 996 F.2d 180, 184 (7th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 923, 127 L.Ed.2d 216 (1994); Bates, 901 F.2d at 1427-29. A single circuit judge "may not dismiss or otherwise determine an appeal," Fed. R.App. P. 27(c), and I go on to address the next ground.
 
 
 36
 b. Federal Equitable Jurisdiction
 
 
 37
 In institutional reform litigation, the constitutional violation provides the authority for a court-imposed remedy which displaces local control:
 
 
 38
 The well-settled principle that the nature and scope of the remedy are to be determined by the violation means simply that federal-court decrees must directly address and relate to the constitutional violation itself. Because of this inherent limitation upon federal judicial authority, federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation....
 
 
 39
 Milliken v. Bradley (Milliken II), 433 U.S. 267, 281-82, 97 S.Ct. 2749, 2758, 53 L.Ed.2d 745 (1977) (citations omitted). See also Board of Education v. Dowell, 498 U.S. 237, 247, 111 S.Ct. 630, 636-37, 112 L.Ed.2d 715 (1991). Federal courts simply may not force local governments, "over their objections, to undertake a course of conduct not tailored to curing a constitutional violation." Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 389, 112 S.Ct. 748, 762, 116 L.Ed.2d 867 (1992). Of course, the parties are free to consent to remedies beyond what the Constitution requires given a finding, either express or implied, of unconstitutional conditions. Id. See generally Cooper v. Noble, 33 F.3d 540, 544-45, supplemented, 41 F.3d 212 (5th Cir.1994); Diaz v. Romer, 961 F.2d 1508, 1510-11 (10th Cir.1992); Duran v. Carruthers, 885 F.2d 1485, 1489 (10th Cir.1989), cert. denied, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990). Even with a consent decree, however, the district court is not free to enter a modification of the injunction which would be inconsistent with the governing law. Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO, C.L.C. v. City of Cleveland, 478 U.S. 501, 527-28, 106 S.Ct. 3063, 3078-79, 92 L.Ed.2d 405 (1986); Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 580 n. 12, 104 S.Ct. 2576, 2588, 81 L.Ed.2d 483 (1984).
 
 
 40
 In this case there is an express finding that whether a class-wide constitutional violation exists will remain undecided. Moreover, the preliminary injunction that gave way to the permanent injunction was issued largely on a showing of irreparable injury:
 
 
 41
 Without deciding whether overpopulation alone can amount to punishment sufficient to constitute a violation of the Due Process Clause, from the stipulated fact of overpopulation in relation to BCDC's design capacity, the Court concludes there is a substantial likelihood that, unless the Court intervenes, the unabated continuation of a population in excess of design capacity places such additional burdens on all aspects of BCDC, its staff, its residents, its services and its systems as to substantially increase the likelihood that irreparable harm, whether it rises to the level of a constitutional violation or not, will occur between now and the trial of this matter.
 
 
 42
 D. Ct. Order filed August 23, 1995 at 9-10 (doc. 106). At oral argument, counsel for Plaintiffs-Intervenors acknowledged that no finding of a constitutional violation has been made.
 
 
 43
 Although pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment, the Eighth Amendment standards applicable to convicted persons provide the benchmark in this case. See Bell v. Wolfish, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1871-72, 60 L.Ed.2d 447 (1979); Howard v. Dickerson, 34 F.3d 978, 981 (10th Cir.1994). Proof of a constitutional violation in conditions of confinement cases cannot be presumed, and that is particularly true here--the district court's preliminary injunction and subsequent rulings before me do not address the current requirements (or cases) for obtaining relief in conditions of confinement cases. The district court has made no determination that the overcrowding at BCDC, let alone the conditions at any other temporary facility, have resulted in a constitutional violation with respect to any inmate.
 
 
 44
 While the Eighth Amendment proscribes "cruel and unusual punishments," there are two components of an Eighth Amendment claim which must be proven to support a remedy: an objective component, the alleged deprivation must deny "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), and a subjective component, the responsible official must have a sufficiently culpable state of mind, i.e. deliberate indifference, Wilson v. Seiter, 501 U.S. 294, 299-304, 111 S.Ct. 2321, 2324-27, 115 L.Ed.2d 271 (1991) (conditions of confinement case). See Clemmons v. Bohannon, 956 F.2d 1523, 1525-26 (10th Cir.1992) (en banc) (acknowledging Wilson components). See also Helling v. McKinney, 509 U.S. 25, 33-37, 113 S.Ct. 2475, 2481-82, 125 L.Ed.2d 22 (discussing objective and subjective components of Eighth Amendment violations); Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) ("it is obduracy and wantonness, not inadvertence or error in good faith, that characterize conduct prohibited...."); Johnson v. Phelan, 69 F.3d 144, 150 (7th Cir.1995) ("No intent to injure means no 'punishment'; and no 'punishment,' no violation."); Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (discussing objective component). See also 18 U.S.C. § 3626(a) and (b) (enacting limits upon remedies for individual overcrowding claims under the Eighth Amendment).
 
 
 45
 While the district court is to be accorded flexibility in administering the permanent injunction, Defendants have made a strong showing that the permanent injunction does not preclude them from assigning inmates to facilities other than BCDC, let alone require them to obtain the district court's permission after Plaintiffs' counsel previews/inspects the facilities and has the opportunity to lodge objections. The district court has acknowledged repeatedly that alternative sites are not foreclosed, thus, while the permanent injunction prescribes population caps for BCDC, it does not require use of the MRS if alternatives can be found to avoid overpopulation.
 
 
 46
 Requiring inspection by Plaintiffs' counsel and court approval of any temporary site, whether it be Montessa Park, the state penitentiary or the soon-to-be-operational Westside facility, reaches far beyond maintaining an acceptable population level at BCDC. Such requirements necessarily involve the district court in the operation of other institutions, something generally proscribed absent a condition which offends the Constitution. See Rhodes, 452 U.S. at 337, 101 S.Ct. at 2394-95. "District courts must bear in mind that their inquiries 'spring from Constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.' " Id. (quoting Bell v. Wolfish, 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979)). Moreover, the district court's requirements seem particularly inappropriate here, notwithstanding the lack of proof of a constitutional violation, because the temporary locations represent an effort on the part of the Defendants to comply with the permanent injunction concerning population caps. See Preiser v. Rodriguez, 411 U.S. 475, 492, 93 S.Ct. 1827, 1837-38, 36 L.Ed.2d 439 (1973) (comity requires an opportunity for prison officials to correct conditions); Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir.1994) (vacating injunctive relief after staying it pending appeal and noting that "intrusive and far-reaching federal judicial intervention in the details of prison management is justifiable only where state officials have been afforded the opportunity to correct constitutional infirmities and have abdicated their responsibility to do so"); Dean v. Coughlin, 804 F.2d 207, 214 (2d Cir.1986) (vacating preliminary injunction).
 
 
 47
 Though too generalized to support a constitutional violation, the district court has been candid about where it believes the fault lies:
 
 
 48
 The order we entered as a result of the stipulation by the parties last August spoke [ ] to the overcrowding issue and recognized that the fault was not with BCDC officials. It recognized that the blame for overcrowding had to rest on the public who pressured legislators to increase criminal penalties yet at the same time deny the authority for public expenditure for new or improved facilities or programs directed toward persons against whom these laws are enforced.
 
 
 49
 It is obvious that stiffer penalties result in more incarcerated individuals, and the public has to follow through and take responsibility for ensuring that penal institutions are equipped and staffed to handle increased inmates.
 
 
 50
 Likewise, politicians who are quick to support public cries for stiffer penalties and incarceration must not shy away from supporting the unpopular measures necessary to meet the corresponding demands of an overused system.
 
 
 51
 Aplt./Pet. Emergency Request, ex. 2, Tr. at 80-81. While I appreciate the concern shown by the district court and the district court's willingness to be available to the parties as needed, the proper, and properly limited, role of the federal courts requires evaluation of these claims within the existing legal framework and appropriate support by competent proof. Taylor, 34 F.3d at 269, 271. While the conditions in this case deserve careful scrutiny, they must be evaluated "with proper regard for the limited competence of federal judges to micromanage prisons." See Bruscino v. Carlson, 854 F.2d 162, 164-65 (7th Cir.1988), cert. denied, 491 U.S. 907, 109 S.Ct. 3193, 105 L.Ed.2d 701 (1989); Taylor, 34 F.3d at 269-70.
 
 
 52
 If the "inspection and approval" requirements are viewed independently, Defendants have made a strong showing that such requirements must fail under the current constitutional standards for conditions of confinement claims, as well as the standards for governing preliminary injunctive relief.
 
 2. Threat of Irreparable Harm
 
 53
 If the stay is not granted, Defendants will be forced to release 163 inmates. Defendants maintain that they need flexibility to house inmates elsewhere on short notice to meet the population caps imposed by the permanent injunction and to undertake local law enforcement initiatives. Requiring district court approval, after inspection and probable objection by Plaintiffs' counsel, is a cumbersome procedure that is tantamount to a presumption that Defendants will act in an unconstitutional manner regarding these other facilities. Moreover, the district court's procedure will interfere with law enforcement initiatives, prosecutorial discretion and state judicial power.
 
 
 54
 3. Absence of Harm to Opposing Parties If the Stay Is Granted
 
 
 55
 Given that no finding of a constitutional violation has occurred, it does not appear that opposing parties will be harmed in a way that is redressable in federal court. Moreover, a new facility on the Westside should open within sixty days and be available to house inmates over the population cap at BCDC. Finally, while the district court's "inspect and approve" requirements substantially alter the status quo, a stay pending appeal will restore it. See Lundgrin, 619 F.2d at 63.
 
 4. Public Interest
 
 56
 It is in the public interest to have these claims resolved prior to implementing the "Matrix Release System." Federalism and concern for local control concerning law enforcement, prosecution and adjudication, counsel in favor of an orderly resolution of the serious claims involved.
 
 
 57
 The stay pending appeal is granted and the petition for a writ of prohibition is referred to the Clerk for panel assignment.
 
 
 58
 IT IS SO ORDERED.