**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 10, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DWIGHT L. ALLEN,

           Plaintiff-Appellee,

v.

DENNIS AVANCE,

           Defendant-Appellant.

No. 11-6102

(W.D. of Okla.)

(D.C. No. CV-08-00485-F)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **LUCERO**, and **TYMKOVICH**, Circuit Judges.

---

Dwight Allen filed a § 1983 suit against Dennis Avance, Captain and Jail
Administrator for Garvin County Sheriff's Office, alleging that Avance violated
his constitutional rights while Allen was a pretrial detainee in Garvin County Jail.
He claims that he was locked in the county jail "drunk tank" for approximately
twelve days without any bedding, mattress, or toiletries in retaliation for his
decision to file an administrative grievance.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Avance moved for summary judgment, raising a defense of qualified immunity. The district court denied qualified immunity on two of Allen's claims arising out of this incident, one alleging cruel and unusual punishment arising from the cell conditions, and the other alleging retaliation for filing prison grievances in violation of the First Amendment. This case comes to us on Avance's interlocutory appeal of the denial of qualified immunity under 28 U.S.C. § 1291. The grant of qualified immunity on the other claims was not appealed.

We affirm. The district court found disputed historical facts that preclude summary judgment, and accepting those facts in the light most favorable to Allen, he has sufficiently alleged a violation of clearly established constitutional rights to defeat qualified immunity.

## I. Facts

The district court on summary judgment assumed the following facts as true for purposes of qualified immunity. Allen was a pretrial detainee in the Garvin County Jail. On April 8, 2008, because a number of guards planned to attend a funeral, they cancelled scheduled inmate visitation. Allen and his cell mates protested this cancellation by refusing to return their lunch plates and utensils when the correctional officers came to collect them. As a result of this protest, Allen was placed in an observation cell, known as the "drunk tank," but returned to his own cell after a short time.

That evening Allen asked the guards about the procedure for filing a grievance about the cancelled visitation. Instead of assisting with the grievance, the guards took him back to the observation cell and "hogtied" him, placing him in a four-point restraint. After an hour the guards untied him but left him in the cell.

The parties dispute how long Allen spent in this cell, with Avance insisting that Allen was not left overnight, much less a week, and Allen claiming that he was still in the observation cell during visiting day a week later on April 15. The official incident report documents Avance's order that Allen should be placed in the observation cell and that he should not be provided with any bedding or toiletries. Specifically, the report stated that "Avance advised that inmate Allen is not to have anything (mat, pillow, comm., prop, visits, etc.)" and that "inmate Allen is to remain in cell 3 untill [sic] further notice, per Capt. Avance." R, Vol. I at 206.

No document records when Allen was returned to the general jail population. Allen alleges that he spent the next week in the observation cell, with no toilet paper, toothbrush or toothpaste, towel, mattress, blanket, or pillow. Every time he needed to use the bathroom, he had to bang on the door of his cell and ask his guards for toilet paper. Even then, it was delivered not by a guard but by a trustee. According to Allen's mother and sister, who visited him during this time, the jail provided none of the necessities described above, and Allen

appeared in a ragged condition. During this time, his cell was covered with standing water, which was left uncleaned throughout his stay.

When Allen was finally returned to his own cell, he filed a grievance complaining about his treatment. According to Allen, Avance responded to this grievance by telling him that "you don't know a damn thing about the rules and you don't run a f***ing thing at this jail." R., Vol II. at 529. He followed up with another grievance on April 20 and was again placed back in the observation cell, this time for four days.

The district court found that Allen had produced enough evidence in support of his allegations to create a genuine question of material fact, including disputed facts about how long he was in the observation cell, the conditions of the cell, and Avance's motives.

## II. Analysis

Avance argues on appeal that he is entitled to qualified immunity even taking as true the allegations that the district court found sufficiently supported in the record. Before examining whether Allen has properly overcome the qualified immunity defense, we consider the scope of our appellate review.

To defeat a qualified immunity defense, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right and then show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue. *Pearson v. Callahan*, 555

U.S. 223, 232 (2009). Qualified immunity "serves to insulate from suit all but the plainly incompetent or those who knowingly violate the law." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (quotation omitted).

Importantly, before we can reach the question of qualified immunity, we must have jurisdiction to consider the claim on appeal. Our cases establish our appellate jurisdiction only over "purely legal issues raised by the denial of qualified immunity." *Morris v. Noe*, 672 F.3d 1185, 1189 (10th Cir. 2012).

When reviewing a decision to deny summary judgment on the basis of qualified immunity we take the facts that the district court found were supported by the record and construe them in the light most favorable to the plaintiff. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). At the summary judgment stage, "it is generally the district court's exclusive job to determine which *facts* a jury could reasonably find from the evidence presented to it by the litigants." *Lewis*, 604 F.3d at 1225. "We may review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right, but we may not consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." *Morris*, 672 F.3d at 1189 (citation and quotation omitted). Then we may "consider the 'abstract' *legal* questions [of] whether those facts suffice to show a violation of law and whether that law was clearly established at the time of the alleged violation." *Id*. (quoting *Johnson*, 515 U.S. at 313).

The district court here denied summary judgment determining that fact issues remained on Allen's constitutional claims. We do not have jurisdiction to consider the correctness of this finding. We have jurisdiction only to determine whether the facts assumed by the district court are sufficient to meet the legal standards for qualified immunity.

Even accepting the facts as alleged, Avance tries to overcome these hurdles by arguing they do not rise to the level of a constitutional violation or show the denial of a clearly established constitutional right. He thus claims that both the retaliation claim and conditions of confinement claim are invalid as a matter of law.

We disagree. Both the conditions of confinement and retaliation claims are sufficiently supported by disputed facts, which if true, could overcome qualified immunity.

## A. Conditions of Confinement

"Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996)). Corrections officials have the responsibility under the Eighth Amendment, and therefore the Fourteenth Amendment, "to provide humane conditions of confinement by ensuring inmates

-6-

receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998).

We apply a two-part test in evaluating conditions of confinement claims. "To hold a jailer personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component." *Craig*, 164 F.3d at 495. "The objective component requires that the alleged deprivation be sufficiently serious," and "[t]he subjective component requires the jail official to have a sufficiently culpable state of mind." *Id*. (quotation omitted).

The failure to provide basic necessities, if sufficiently prolonged and severe, can satisfy the objective prong of this test. *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996). "This inquiry turns not only on the severity of the alleged deprivations, but also on their duration." *Craig*, 164 F.3d at 495. "[I]n determining whether a pretrial detainee has sufficiently satisfied the Eighth Amendment standard, it is particularly important to develop an adequate record on factual disputes related to the seriousness and length of the alleged deprivations, for these are essential elements of a conditions of confinement claim." *Id*. at 496. "The difference between enduring certain harsh conditions for seven weeks versus six months may be constitutionally significant." *Id*.

There is no bright line. For example, we have found that 24 hours was too long to deprive a prisoner of food and water while conducting an inter-prison transfer, *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010); or that three days is too long to leave a prisoner in a cell covered in human feces, *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001). By contrast, six hours is not too long to spend barefoot in a cell with no toilet. *Ledbetter v. City of Topeka*, 318 F.3d 1183 (10th Cir. 2003).

Avance argues that the facts are less severe than those assumed by the district court. But at this stage of the proceedings, assuming the truth of his allegations, Allen has stated sufficient facts to satisfy both the objective and subjective components of his claim. *Morris*, 672 F.3d at 1189.

First, as the district court recognized, under Allen's version of events he was placed in a holding cell for two periods of time—one seven days, and the other four days. During those times, he was deprived of bedding materials, including a mattress and blankets. Avance's orders also can be construed to require prison staff to deny him access to towels and basic toiletries, including toilet paper, toothpaste, and a toothbrush. The cell had standing water on its floor during at least part of Allen's stay. Allen further claims Avance denied him legal papers, personal property, access to the commissary and visitation.

Second, the subjective element is met. The prison incident reports document that Avance ordered Allen placed in the observation cell and specified

that he should not receive basic necessities.  Together, these facts, if found by the jury, could support a constitutional violation.

Having satisfied the requirement that the assumed facts may support a constitutional violation of his right to be free from cruel and unusual punishment, Allen still must show that the constitutional right was clearly established at the time of the challenged conduct.  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).  "To be clearly established, a right must be sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.'" *Id*. (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2078 (2011)).

That standard is met here.  Under Supreme Court and Tenth Circuit law it is well settled that prisoners cannot be denied access to basic necessities of life for substantial periods.  As we recognized in *Mitchell v. Maynard*, when a prisoner is "provided no mattress, blankets or bedding of any kind, . . . not allowed to leave his cell for exercise, not provided with writing utensils, not provided with adequate ventilation, . . . and only sometimes allowed minimal amounts of toilet paper" and "[t]hese conditions supposedly lasted for a period of days, weeks and months" this could constitute a violation of the prisoner's right to be free of cruel and unusual punishments.  *Mitchell*, 80 F.3d at 1443.  "[A] state must provide within such living space reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing)." *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980).  *See also McBride*, 240

F.3d at 1291 ("Under the Eighth Amendment, jail officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety.").

In sum, we agree with the district court fact disputes preclude a finding of qualified immunity on summary judgment.

## B. Retaliation

Avance also argues Allen's retaliation claim fails as a matter of law. Allen alleges that Avance placed him in the observation cell in retaliation for his filing grievances protesting jail policies and conditions.

"'[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his' constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quoting *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir.1990)). In particular, we have found that officials may not retaliate against prisoners for filing administrative grievances. *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991). But "an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Peterson*, 149 F.3d at 1144.

Allen must allege three elements to show a First Amendment retaliation claim: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would

chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

The first two prongs of this test are easily met here. Allen filed a prison grievance, which our cases have held are constitutionally protected activity. *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010); *Penrod v. Zavaras*, 94 F.3d 1399, 1404–05 (10th Cir. 1996). And, as discussed above, Allen has alleged sufficient facts to establish an Eighth Amendment claim. The prospect of punishment severe enough to satisfy the Eighth Amendment is sufficient to "chill a person of ordinary firmness" from exercising his constitutional rights.

The third prong requires the plaintiff to allege specific facts that, if credited, establish that "but for" the defendant's improper retaliatory motive "the incidents to which he refers, including the disciplinary action, would not have taken place." *Peterson*, 149 F.3d at 1144. Allen must therefore show that Avance would not have placed him in the observation cell if he had not attempted to file and filed the grievances.

Avance claims he was responding to Allen's disruptive behavior and not to Allen's protected activities. But the district court found, and we agree, Allen alleged sufficient facts, with support in the record, to create a genuine question of material fact about Avance's motivation for placing Allen in the observation cell.

-11-

Our cases allow an inference of whether the defendant's response was "substantially motivated" by protected conduct where evidence showed (1) the defendants were aware of the protected activity; (2) the plaintiff directed his complaint to the defendants' actions; and (3) the alleged retaliatory act "was in close temporal proximity to the protected activity." *Gee*, 627 F.3d at 1189. All three of these factors were present here, along with other facts suggesting causation.

The district court found it was possible to infer causation from the fact that Avance ordered Allen into the observation cell on the same day he protested the cancellation of visitation. The court also credited Allen's testimony that when he did file additional grievances after his release from the observation cell, Avance responded, "you don't know a damn thing about the rules and you don't run a [f***ing] thing at this jail." R., Vol. 2 at 529. The court found the fact that when Avance placed Allen to the observation cell the second time he specified that no visitors would be allowed, after Allen had complained about visitation policy. Finally, the evidence shows Avance was aware of Allen's activities and that he personally made the decision to put him in the observation cell with severe restrictions. Allen has alleged sufficient facts to support an inference of retaliation.

The constitutional right to be free from retaliation for the exercise of first amendment rights was also clearly established. It is well settled that prisoners

cannot be retaliated against when they exercise their First Amendment rights. *Smith*, 899 F.2d at 947–48; *see also*, *Gee*, 627 F.3d at 1189 ("It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts."); *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) ("[I]f in fact DOC officials retaliated against Fogle based on his filing administrative grievances, they may be liable for a violation of his constitutional rights."); *Peterson*, 149 F.3d at 1144 ("We have held that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights."); *Penrod*, 94 F.3d at 1404–05 ("[I]t is well established that prison officials . . . may not harass or retaliate against an inmate for exercising his right . . . to petition the Government for redress of . . . grievances.").

In sum, Allen has alleged sufficient facts that a jury could find Avance violated a clearly established constitutional right to be free from retaliation for filing prison grievances.

# III.  Conclusion

For the reasons stated above, we affirm the district court.

AFFIRMED.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge