**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 27, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

DONNA MORRIS, individually and as
next friend of William Morris, III,

     Plaintiff-Appellee,

v.

JAMIE NOE,

     Defendant-Appellant,

and

CITY OF SAPULPA,

     Defendant.

No. 11-5066

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:10-CV-00376-CVE-TLW)**
_____

Scott B. Wood, Wood, Puhl & Wood, P.L.L.C., Tulsa, Oklahoma, for Defendant-
Appellant.

Stephen J. Capron, Capron & Edwards, P.C., Tulsa, Oklahoma, for Plaintiff-Appellee.
_____

Before **KELLY**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

Plaintiff Donna Morris brought this § 1983 action for unlawful arrest and excessive force on behalf of her deceased husband, William Morris III, against Defendants, Officer Jaime Noe and the City of Sapulpa, Oklahoma. She alleges Defendants violated her husband's clearly established rights when Noe forceably arrested him and caused him injury. Defendant Noe moved for summary judgment based on qualified immunity, and the district court denied his motion. Defendant Noe now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

Before proceeding to the merits, we must address Plaintiff's argument that we have no jurisdiction over this appeal. We have jurisdiction only over "final decisions" by the district courts. 28 U.S.C. § 1291. "Ordinarily, orders denying summary judgment do not qualify as 'final decisions' subject to appeal." Ortiz v. Jordan, --- U.S. ---, 131 S. Ct. 884, 891 (2011). But because qualified immunity provides a right to avoid trial, "a district court's decision denying a government official qualified immunity is an immediately appealable final collateral order." Price-Cornelison v. Brooks, 524 F.3d 1103, 1108 (10th Cir. 2008). This right to appeal, however, is limited to "purely legal issue[s]" raised by the denial of qualified immunity. Johnson v. Jones, 515 U.S. 304, 313 (1995). A party may not appeal the district court's determination "that factual issues genuinely in dispute preclude summary adjudication." Ortiz, 131 S. Ct. at 891.

Because our jurisdiction is limited, we "take, as given, the facts that the district court assumed when it denied summary judgment." Johnson v. Jones, 515 U.S. 304, 319 (1995). "[W]e may review whether the set of facts identified by the district court is

sufficient to establish a violation of a clearly established constitutional right, but we may not consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." Forbes v. Twp. of Lower Marion, 313 F.3d 144, 147 (3d Cir. 2002) (Alito, J.) (internal quotation marks omitted). Falling squarely within our jurisdiction is the district court's "legal determination that certain alleged actions violate clearly established law. Defendants may therefore assert on appeal that all of the conduct which the [d]istrict court deemed sufficiently supported for purposes of summary judgment meets the applicable legal standards." Medina v. Cram, 252 F.3d 1124, 1130 (10th Cir. 2001) (internal quotation marks and citations omitted).

Here, the district court denied summary judgment for two reasons, one appealable, and one not. First, the district court determined that fact issues remained on Plaintiff's constitutional claims. Morris v. City of Sapulpa, 2011 WL 1627098 at *7, *8 (N.D. Okla. April 28, 2011). Second, the court held that Defendant was not entitled to qualified immunity based on the facts viewed most favorably to Plaintiff. Id. at *12. We have jurisdiction over only the latter determination. Ortiz, 131 S. Ct. at 892. "Within this limited jurisdiction, we review de novo the district court's denial of a summary judgment motion asserting qualified immunity." Dodds v. Richardson, 614 F.3d 1185, 1192 (10th Cir. 2010) (internal quotation marks omitted).

## II.

The facts assumed by the district court are as follows. A motorist alerted Sapulpa Police Officer Jaime Noe to a domestic disturbance at a residence on Muskogee Street. Upon his arrival at the residence, Noe encountered three persons: Plaintiff, Misty Rowell,

- 3 -

and Quinton Bell. Bell was Rowell's former boyfriend and the father of her child. Rowell's then-current boyfriend was William Morris IV ("William"), Plaintiff's son. Officer Noe learned Bell and William had engaged in an altercation that resulted in William ransacking the Muskogee Street residence, burning some of Bell's clothing in the front yard, and damaging Rowell's vehicle with a tire iron. Plaintiff heard of the incident and went to the Muskogee Street residence. After Plaintiff arrived, Bell parked his truck behind Plaintiff's vehicle, preventing her from leaving.

By the time Noe arrived, William was gone, but Plaintiff, Rowell, and Bell were in the front yard, yelling at each other. Rowell's vehicle showed signs of significant body damage. Glass lay on the ground. A pile of clothing was smoldering in the front yard. Noe sought to calm the participants down and take statements. Two other officers arrived to assist him. About twenty minutes later, Plaintiff's now-deceased husband, William Morris III ("Morris"), arrived on the scene. Morris was six feet, four inches tall and weighed 250 pounds, but he suffered from multiple health problems including heart problems, seizures, and emphysema. Although he was instructed to use supplemental oxygen, no evidence suggests he was using oxygen during the incident.

The situation was "calm and under control" when Morris arrived. Morris first spoke with Plaintiff, and she assured him she was not hurt. Morris then approached Bell, but was never closer to him than eight to ten feet. From that distance, Morris asked Bell "Why was you talking to Mama that way?" He also told Bell that Plaintiff had been feeding Bell's kids. Bell approached Morris, at which point Morris put his hands up and started backing toward the police officers, "for help, I guess." 2011 WL 1627098 at * 6.

- 4 -

Then "two of the police officers lunge[d] towards [Morris] and put their hands on his shoulders, twisted him around and ran him into the bushes . . . throwing him to the ground." Id. The officers then "put their knees—fell into his midsection and his back and handcuffed him." Id.

Morris's version of the events differed slightly from Plaintiff's, but the district court relied on Morris's testimony as well. Morris said he asked Plaintiff upon his arrival "is that him?" in reference to Bell. Plaintiff said responded it was. Morris then "called 'hey' to Bell." According to Morris,

> [Bell came] running at me . . . I just threw my hands up because I didn't know what he was going to do. . . . And then the next thing I know, I'm eating dirt. Sapulpa—two Sapulpa policemen grabbed—I didn't even know they was around. They grabbed me from behind and threw me into some branches. . . . They handcuffed me, picked me up three times by the handcuffs and stood me up and each time they did, I fell.

Id. at 6.

Noe, after handcuffing Morris, noticed Morris smelled of alcohol and exhibited signs of intoxication, such as slurred speech. Morris admitted to consuming "a couple of drinks" two hours earlier. Noe therefore issued Morris a citation for public intoxication. Morris was then taken to the hospital for treatment of hip injuries he suffered as a result of the encounter. Morris stayed at the hospital approximately thirty days. Because he was hospitalized, Morris was unable to appear in court on his public intoxication citation. Plaintiff appeared in court for him and paid the fine, although she could not remember whether she entered a guilty plea. The court records reflect a guilty plea being entered on Morris's behalf.

Approximately three years after the events in question, Morris died. Plaintiff then brought this § 1983 action in federal court, alleging excessive force, unlawful arrest, and various state law claims. On Defendants' motion, the district court granted summary judgment for Defendants on all claims except those against Noe individually. The district court held that, construing the facts in the light most favorable to Plaintiff, Noe was not entitled to qualified immunity on either claim.

III.

Defendant Noe raises three issues on appeal. First, he argues he was entitled to qualified immunity because he had reasonable suspicion Morris was committing an assault and the force he used to restrain Morris was reasonable. Second, he claims the district court erred in relying on unpublished opinions in determining whether the law was clearly established for purposes of qualified immunity. Third, he argues the district court erred by crediting affidavits that created "sham fact issues" and by not considering other evidence that "demonstrated no genuine material fact existed." The second issue is closely tied to our analysis of the first issue, so we will address those issues together. We have no jurisdiction over the third issue, because it is directly related to the district court's determination that fact issues remained for trial. Unlike the qualified immunity question, the district court's evidentiary decisions do not create a separate question "significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits." Johnson, 515 U.S. at 314. Thus, our jurisdiction on appeal is limited to Defendant's first issue—whether he was entitled to qualified immunity.

Qualified immunity requires a "two-step sequence." Pearson v. Callahan, --- U.S.

- 6 -

---, 129 S. Ct. 808, 815 (2009). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009). Only if the plaintiff has satisfied both steps is qualified immunity defeated. We conduct the two-step qualified immunity inquiry for the unlawful arrest and excessive force claims separately. See Cortez v. McCauley, 478 F.3d 1108, 1126–27 (10th Cir. 2007) (en banc).

A.

We turn first to Plaintiff's unlawful arrest claim. Such claims are based on the settled proposition that "a government official must have probable cause to arrest an individual." Fogarty v. Gallegos, 523 F.3d 1147, 1158–59 (10th Cir. 2008) (internal quotation marks omitted). Before we turn to the probable cause inquiry, however, we must determine when the arrest took place. Whether Defendant Noe had probable cause depends on the facts he knew at the time of arrest, and Defendant acquired additional facts as the situation unfolded. Defendant argues Morris was only arrested when he was cited for public intoxication, not when he was tackled. He claims "the initial detention by 'tackle' and the subsequent arrest for public intoxication were t[w]o separate and distinct events." If this is correct, the arrest was undoubtedly valid because by the time he cited Morris, Defendant had probable cause to believe Morris was intoxicated. Plaintiff, on the other hand, has maintained throughout the litigation that the arrest took place when Defendant "threw down" Morris. Plaintiff points out Defendant did not "arrest" Morris for public intoxication, but rather issued him a citation for that offense. To resolve this

- 7 -

dispute, we must consider the distinction in Fourth Amendment jurisprudence between arrests and investigative detentions.

1.

The Supreme Court has identified three categories of police-citizen encounters: consensual encounters, investigative stops, and arrests. Oliver v. Woods, 209 F.3d 1179, 1186 (10th Cir. 2000). "Consensual encounters are not seizures within the meaning of the Fourth Amendment, and need not be supported by suspicion of criminal wrongdoing." Id. An investigative detention, also called a Terry stop, is an encounter in which police may "stop and briefly detain a person for investigative purposes." United States v. Sokolow, 490 U.S. 1, 7 (1989). Such a stop is a Fourth Amendment seizure, but does not require probable cause. Oliver, 209 F.3d at 1186. Rather, a Terry stop is justified "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." Sokolow, 490 U.S. at 7 (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). Finally, an arrest is a form of Fourth Amendment seizure characterized by the intrusive or lengthy nature of the detention. Oliver, 209 F.3d at 1186. An arrest must be supported by probable cause. Fogarty, 523 F.3d at 1158–59. A detention ceases to be a Terry stop and becomes an arrest if it continues for an excessive time or closely resembles a traditional arrest. Hiibel v. Sixth Judicial Dist. Ct. of Nev., 542 U.S. 177, 186 (2004).

When Defendant "threw" Morris to the ground, Defendant certainly seized Morris within the meaning of the Fourth Amendment. "A person is seized by the police . . . when the officer, by means of physical force or show of authority, terminates or restrains

his freedom of movement through means intentionally applied." Brendlin v. California, 551 U.S. 249, 254 (2007) (internal citations, quotation marks, and emphasis omitted). See also California v. Hodari D., 499 U.S. 621, 629 (1991) ("[The defendant] was not seized until he was tackled."). Defendant then further restrained Morris by handcuffing him. The question facing us is whether this seizure should be characterized as a Terry stop or a full arrest. "[T]he use of firearms, handcuffs, and other forceful techniques does not *necessarily* transform a Terry detention into a full custodial arrest." United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994) (emphasis added). But we have said such techniques "*generally* exceed the scope of an investigative detention." Cortez, 478 F.3d at 1116 (emphasis added). Officers may restrain an individual in order to "maintain the status quo during the course of a Terry stop." Gallegos v. City of Colo. Springs, 114 F.3d 1024, 1031 (10th Cir. 1997) (quoting United States v. Hensley, 469 U.S. 221, 235 (1985)). We have approved both a takedown and the use of handcuffs during the course of a Terry stop, where the officers reasonably feared for their safety. See, e.g., Id. at 1030–31 (arm-bar takedown); United States v. Albert, 579 F.3d 1188, 1194 (10th Cir. 2009) (handcuffs).

But these cases have involved traditional investigatory stops, such as traffic stops, that presented additional concerns for officer safety. Here, the facts indicate a full custodial arrest. Defendant Noe did not merely "maintain the status quo" when he took Morris to the ground. Under the facts relied on by the district court, Defendant threw Morris to the ground despite the fact Morris presented no threat to officer safety and had not engaged in any suspicious activity. Because "an unreasonable level of force

transforms a <u>Terry</u> detention into an arrest requiring probable cause," <u>United States v. Shareef</u>, 100 F.3d 1491, 1507 (10th Cir. 1996), Defendant's actions in throwing down Morris constituted an arrest, rather than a detention. This brings us to the next question—whether the arrest was supported by probable cause.

2.

"Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested." <u>United States v. Martin</u>, 613 F.3d 1295, 1302 (10th Cir. 2010) (internal quotation marks omitted). The probable cause inquiry is an objective one. "An arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as 'the circumstances, viewed objectively, justify' the arrest." <u>Howards v. McLaughlin</u>, 634 F.3d 1131, 1142 (10th Cir. 2011) (quoting <u>Devenpeck v. Alford</u>, 543 U.S. 146, 153 (2004)). That is, an arrest is lawful as long as probable cause exists for *some* offense.

Defendant argues he had probable cause to arrest Morris for assault. Under Oklahoma law, "[a]n assault is any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another." 21 Okla. Stat. Ann. § 641. Here, the facts on which the district court relied do not support probable cause that Morris was committing an assault. Morris was unarmed, and never approached within reach of Bell. He did not threaten Bell with words or gestures. When Bell came toward him, Morris backed away with his hands raised in a defensive position. Based on these facts, a reasonable officer in Defendant's position would not have believed he had probable cause to arrest Morris for

assault.

Defendant argued in the district court that, in addition to assault, he had probable cause to arrest Morris for several municipal offenses, including disturbing the peace, disorderly conduct, public intoxication, resisting a police officer, and failing to obey orders of a police officer.[1]  Defendant referenced none of these offenses in his opening brief, and we need not consider them because "[a]n issue or argument insufficiently raised in the opening brief is deemed waived."  Becker v. Kroll, 494 F.3d 904, 913 n.6 (10th Cir. 2007).  But even if we addressed these other offenses, we would agree with the district court that the facts at the time of the arrest, as the district court construed them, did not support probable cause for any of these offenses.  Officer Noe testified he only noticed signs of Morris's intoxication *after* he had taken him down and handcuffed him.  Morris's behavior up to the point of the arrest was not threatening, loud, or disorderly.  Nor did Morris fail to comply with any officer orders.  Thus, Noe had no reason to arrest

---

[1] The Sapulpa municipal offense of disturbing the peace includes, among other things, "obscene, abusive, profane, vulgar, threatening, violent or insulting language or conduct," "appearing in an intoxicated condition," "engaging in a fistic encounter," or "committing any other act in such a manner calculated as to unreasonably disturb, interfere or alarm the comfort and repose of any person."  Sapulpa City Code § 10-401 (2011).  The offense of disorderly conduct requires, in relevant part, (1) violent conduct, (2) jostling or pushing in a public place, (3) use of fighting words that creates "turmoil," or (4) conduct that causes or provokes a fight, brawl, or riotous conduct posing a danger to life, limb, or property.  Id. § 10-403.  Public intoxication is defined as being under the influence of alcohol to such an extent "as to deprive the person of his full mental or physical power or be unable to exercise care for his own safety or the safety of others."  Id. § 10-501.  The City code also says it is unlawful to "resist, oppose, assault, prevent, fail to cooperate with or in any way interfere with a police officer" engaged in his official duties or to "fail to heed a reasonable order of a peace officer" discharging his official duties.  Id. §§ 10-606, 10-608.

Morris for any offense. Accordingly, Plaintiff has satisfied the first step of the qualified immunity analysis as to his unlawful arrest claim.[2]

---

[2] Defendant argues on appeal that Morris's guilty plea to public intoxication bars Plaintiff's § 1983 unlawful arrest claim. The district court did not address this argument when ruling on the motion for summary judgment, likely because Defendant inadequately raised the argument. After Defendant filed his notice of appeal, however, he argued in a motion to stay trial that Morris's guilty plea was a "complete defense to Plaintiff's claim for false arrest." The district court apparently agreed with Defendant and issued an amended order noting this argument. Of course, the district court had no jurisdiction to rule on the issue after the notice of appeal was filed. Stewart v. Donges, 915 F.2d 572, 576 (10th Cir. 1990) ("[A]n interlocutory appeal from an order refusing to dismiss on . . . qualified immunity grounds relates to the entire action and, therefore, it divests the district court of jurisdiction to proceed with any part of the action. . . ."). The court nevertheless discussed the rule in Heck v. Humphrey, 512 U.S. 477, 487 (1994), that a plaintiff cannot recover under § 1983 if a judgment in his favor would "necessarily imply the invalidity of his conviction" unless the conviction has been reversed or otherwise invalidated. The court reasoned: "A finding that Noe lacked probable cause to arrest Morris III for public intoxication would necessarily 'imply the invalidity of his conviction,' and, therefore, his § 1983 claim for unlawful arrest should be dismissed upon remand, which should moot the appeal as to qualified immunity on that ground." Morris v. City of Sapulpa, 2011 WL 1765304 at *1 n.1 (N.D. Okla. May 9, 2011). The district court did not purport to rule on this issue, because it had no jurisdiction, but indicated it intends to rule on the issue on remand. Ordinarily, we do not address issues not yet ruled on by the district court. Pac. Frontier v. Pleasant Grove City, 414 F.3d 1221, 1238 (10th Cir. 2005). But because the issue is a purely legal one, Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1538 (10th Cir. 1996), and the proper resolution is beyond doubt, Singleton v. Wulff, 428 U.S. 106, 121 (1976), we exercise our discretion to reach the issue. Heck does not bar the suit. First, in order to prevail on her § 1983 claim, Plaintiff would not need to "negate an element of the offense of which [Morris] has been convicted." Heck, 512 U.S. at 486 n.6. As discussed above, the lawfulness of the takedown is a question distinct from the lawfulness of the public intoxication citation. "[A] suspect's proof that police lacked probable cause to arrest him does not necessarily imply the invalidity or unlawfulness of his conviction for the underlying offense." Laurino v. Tate, 220 F.3d 1213, 1217 (10th Cir. 2000). See also Evans v. Poskon, 603 F.3d 362, 363–64 (7th Cir. 2010) ("[m]any claims that concern how police conduct searches or arrests are compatible with a conviction."). Here, Defendant did not even arrest Morris for the "underlying offense," but for a different offense that was never charged. So a finding Defendant lacked probable cause to take Morris down would not invalidate Morris's public intoxication conviction, which was based on facts acquired subsequent to the takedown. Second, the Heck bar does not apply to plaintiffs who have

- 12 -

3.

The second step in our qualified immunity inquiry is whether Morris's right to be free from an unlawful arrest was clearly established. "When a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest." Robertson v. Las Animas Cnty. Sheriff's Dep't, 500 F.3d 1185, 1191 (10th Cir. 2007). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Cortez, 478 F.3d at 1120. Here, the question is whether Defendant could have reasonably believed probable cause existed to arrest Morris. Based on the facts assumed by the district court, we conclude he could not. A reasonable officer would know the offense of assault requires at least some attempt to use "force or violence" to cause harm to another. Morris exhibited no signs of violence or intent to cause harm. According to the facts assumed by the district court, Morris was calm, remained out of reach of Bell, and backed up at the first sign Bell wanted to escalate the encounter. Such nonviolent conduct is not enough for any reasonable officer to believe Morris was committing an assault. Thus, Defendant is not entitled to qualified immunity on the unlawful arrest claim.

no available habeas corpus remedy. Cohen v. Longshore, 621 F.3d 1311, 1317 (10th Cir. 2010); see also Spencer v. Kenna, 523 U.S. 1(1998) (five justices agreeing that Heck's favorable termination requirement did not apply to "a former prisoner, no longer in custody"). Because Morris was never in custody, but merely received a citation, Heck does not bar Plaintiff's unlawful arrest claim. See Klen v. City of Loveland, Colo., 661 F.3d 498, 515 (10th Cir. 2011).

- 13 -

Having resolved the issue of qualified immunity on Plaintiff's unlawful arrest claim, we now turn to her claim for excessive force. "Excessive force claims are governed by the Fourth Amendment's 'objective reasonableness' standard." Cavanaugh v. Woods Cross City, 625 F.3d 661, 664 (10th Cir. 2010). Under this standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). In determining whether the use of force is reasonable in a particular situation, we consider (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to flee. Id. at 396. Although Plaintiff has introduced evidence the officers "fell into [Morris's] midsection and back" and "picked [him] up three times by the handcuffs," Plaintiff has focused her excessive force claim entirely on the initial tackle or "throw down." Accordingly, we too focus there.

1.

At least two of the Graham factors weigh strongly in Plaintiff's favor, while one weighs slightly in Defendant's favor. Under the first factor, we consider the severity of the crime at issue. Although we have concluded Defendant had no probable cause to arrest Morris for any crime, we do not merely assume *no* crime was at issue. Cortez, 478 F.3d at 1126. We judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight." Graham, 490 U.S. at 396. Thus, in an excessive force inquiry, we ask whether the force used "would have been reasonably necessary *if the arrest or the detention were warranted.*" Cortez, 478 F.3d at 1126. See also Fogarty, 523 F.3d at 1160 (assuming "for the purposes of our independent excessive force analysis" that the defendant had committed a crime, even though no probable cause existed to arrest for the crime).

Here, Defendant asserts he had probable cause to arrest Morris for assault, which in Oklahoma is a misdemeanor punishable by up to thirty days in jail, a fine of up to $500, or both.[3] Okla. Stat. Ann. tit. 21 § 644(A). Although assault is by no means an insignificant offense, Oklahoma law treats it as a misdemeanor, and "the amount of force used should [be] reduced accordingly." Fogarty, 523 F.3d at 1160. This is the only factor that gives us pause. A forceful takedown or "throw down" may very well be appropriate in arrests or detentions for assault, especially if the officer is trying to prevent an assault. So this factor may weigh slightly in Defendant's favor, but only because we must assume the arrest was valid.[4]

---

[3] Public intoxication, the offense for which Noe eventually cited Morris is also a misdemeanor. Sapulpa City Code § 10-501 (2011) (referencing Okla. Stat. Ann. tit. 37 § 8).

[4] We recognize that, in the context of a qualified immunity analysis, assuming the arrest is valid creates tension with our duty to "take, as given, the facts that the district court assumed when it denied summary judgment." Johnson, 515 U.S. at 319. On the facts the district court assumed, Defendant did not have probable cause to arrest Morris for *any* crime. But Cortez and Fogarty indicate we should consider the offense for which the officer thought he had probable cause. See Cortez, 478 F.3d at 1127 (a plaintiff has no claim for excessive force if the police "use no more force than would have been reasonably necessary if the arrest or the detention were warranted"); Fogarty, 523 F.3d at

- 15 -

The second factor weighs heavily in Plaintiff's favor. Morris posed little immediate threat to the safety of the officers or Bell. Admittedly, Morris "walk[ed] toward the group of officers and Bell," which might present some threat. Furthermore, Morris was a large man and he asked Bell a potentially confrontational question: "Why was you talking to Mama that way?" But Morris carried no weapon, made no overt threats, and did not get within reach of Bell. See Cavanaugh, 625 F.3d at 665 (force was excessive when an officer Tasered a woman who was clearly unarmed and had walked past the officer who had not ordered her to stop). Furthermore, none of the officers gave Morris any warning or told him to calm down. Cf. Mecham v. Frazier, 500 F.3d 1200, 1204–05 (10th Cir. 2007) (force was not excessive where woman refused to cooperate with police and exit her car after multiple warnings). At the time he was taken down, Morris was backing away from Bell in apparent attempt to deescalate the encounter. On these facts, Morris posed little threat to officer or bystander safety.

Finally, under the third Graham factor, Morris was neither resisting arrest nor attempting to flee. In fact, he was backing *toward* the officers when they grabbed him from behind. See Casey v. City of Fed. Heights, 509 F.3d 1278, 1282 (10th Cir. 2007) (plaintiff walking toward a courthouse to return a mistakenly removed folder "made himself easier to capture, not harder"). Morris did not struggle with the officers before or after they took him to the ground. See Cortez, 478 F.3d at 1128 (finding excessive force

_____

1160 ("Assuming for the purposes of our independent excessive force analysis" that the defendant had committed a misdemeanor, even though the police had no probable cause to arrest him for that misdemeanor). Doing so here does not affect the result, because the remaining two Graham factors weigh strongly in Plaintiff's favor.

- 16 -

where plaintiff did not "actively resist[] seizure" and "cooperated fully"). Thus, based on the facts assumed by the district court, Plaintiff can meet her burden on the first qualified immunity prong. Yet even if Noe violated a constitutional right, he is still entitled to qualified immunity if the right was not clearly established at the time. We turn now to the second prong.

2.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). The question of whether a right is clearly established must be answered "in light of the specific context of the case, not as a broad general proposition." Saucier, 584 F.3d at 964. That is, the question is not whether the general right to be free from excessive force is clearly established, but whether Morris had a clearly established right under the facts of this case. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Klen v. City of Loveland, Colo. 661 F.3d 498, 511 (10th Cir. 2011). Because the existence of excessive force is a fact-specific inquiry, however, "there will almost never be a previously published opinion involving exactly the same circumstances." Casey, 509 F.3d at 1284. Thus, we have adopted a sliding scale: "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." Pierce v. Gilchrist, 359 F.3d 1279,

- 17 -

1298 (10th Cir. 2004). In fact, we do not always require case law on point. "[W]hen an officer's violation of the Fourth Amendment is particularly clear from Graham itself, we do not require a second decision with greater specificity to clearly establish the law." Casey, 509 F.3d at 1284.

The district court discussed, and Plaintiff cites, a number of cases involving police tackles or takedowns. Most of these cases are of limited usefulness, however, because the facts are dissimilar to this case. Several cases found excessive force based on abusive conduct subsequent to the takedown. In Gouskos v. Griffith, 122 F. App'x 965, 967–68 (10th Cir. 2005) (unpublished), an officer threw to the ground a man who was picking up his daughter from a rowdy party.[5] The officer allegedly choked the man almost to unconsciousness and continued to step on his back so he could not breathe after he was handcuffed and totally subdued. Id. at 975. The district court granted the officer

_____

[5] Defendant makes much of the fact Gouskos is an unpublished opinion, and raises as a separate issue on appeal the district court's failure to "conduct a proper qualified immunity inquiry." In Green v. Post, 574 F.3d 1294, 1305 n.10 (10th Cir. 2009), we said, "In determining whether the law was clearly established, we have held that we may not rely upon unpublished decisions." We cited for this proposition Medina v. City & Cnty. of Denver, 960 F.2d 1493, 1498–99 (10th Cir. 1992) overruled on other grounds by Cnty. of Sacramento v. Lewis, 523 U.S. 833 (1998). In Medina, we said, "The appellant cites to one unpublished ruling in the United States District Court for the District of Colorado, but because that ruling was unpublished the appellant cannot rely on it to prove the clearly established law in this jurisdiction." Id. Medina did not "hold," as Green suggests, that unpublished cases from *this* court were irrelevant to a qualified immunity inquiry. Instead, Medina stands for the unremarkable proposition that a single unpublished district court opinion is not sufficient to render the law clearly established. We have, it is true, indicated that an unpublished opinion "provides little support for the notion that the law is clearly established" on a given point. Mecham, 500 F.3d at 1206. But we have never held that a district court must ignore unpublished opinions in deciding whether the law is clearly established. Ultimately, we need not decide the issue today because the law in this case is clearly established even without reference to Gouskos.

qualified immunity, but we reversed, holding the facts showed a violation of a clearly established right. Id. at 977. In support of our holding, however, we cited cases dealing with "post-arrest kicking, beating and choking." Id. Gouskos is not particularly helpful here, because it focused on the subsequent beating, rather than the initial takedown. This same problem arises with other cases Plaintiff cites. See Dixon v. Richer, 922 F.2d 1456 (10th Cir. 1991) (police officers stopped a man suspected of having information about a fight and beat him with a flashlight, despite his compliance); Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993) (three officers tackled plaintiff and beat him with a flashlight for about a minute).[6] In short, we have found no cases addressing the type of force used here—a forceful takedown that by itself caused serious injury.

Ultimately, however, we may conclude a constitutional right was clearly established, even in the absence of similar prior cases, if the force is clearly unjustified based on the Graham factors. Fogarty, 523 F.3d at 1162; Casey, 509 F.3d at 1284. In Raiche, for example, the First Circuit concluded:

> A reasonable officer . . . would not have needed prior case law on point to recognize that it is unconstitutional to tackle a person who has already stopped . . . and who presents no indications of dangerousness. Such conduct is a major departure from reasonable behavior under both the Graham factors and the officer's training.

---

[6] Other cases the district court cites are also dissimilar because they involve high-speed "tackles" rather than "throwing to the ground" as took place here. See Chidester v. Utah County, 268 F. App'x 718, 727 (10th Cir. 2008) (unpublished) (SWAT deputy tackled plaintiff "while running full speed"); Raiche v. Pietroski, 623 F.3d 30, 34 (1st Cir. 2010) (involving a "football-style" tackle). Furthermore, both of these cases were decided *after* the incident in this case. So although their reasoning may be persuasive, they cannot be used to demonstrate the clearly established law at the time of Morris's arrest. Weigel v. Broad, 544 F.3d 1143, 1174 (10th Cir. 2008).

Raiche, 623 F.3d at 39.

Here, as we discussed above, the first Graham factor only marginally supported using force against Morris, and the second two factors weighed heavily against it. So a reasonable officer would know based on his training that the force used was not justified. "Graham establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest." Casey, 509 F.3d at 1285. See also Thorton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998) (holding where arrestees had not committed a serious crime, posed no immediate threat, and did not actively resist arrest, "the officers were not justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive"). Noe had reason to believe Morris was, at most, a misdemeanant. But Morris posed no threat to Noe or others, nor did he resist or flee. Thus, based on the facts assumed by the district court, Morris's right to be free from a forceful takedown was clearly established under Graham. Defendant is not entitled to qualified immunity on either of Plaintiff's claims.

AFFIRMED.