FILED
United States Court of Appeals
Tenth Circuit

August 1, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

NICHOLL ANDERSON, Personal
Representative for the Estate of Mitchel
Anderson, deceased,

        Plaintiff - Appellee,

    v.

B. WORSTELL, (No. 2172) individually
and in his capacity as a paid peace officer
and as an employee and/or agent of the
Colorado Springs Police Department and
the City of Colorado Springs; C.
CALKINS, (No. 2047) individually and in
his capacity as a paid peace officer and as
an employee and/or agent of the Colorado
Springs Police Department and the City
of Colorado Springs; THE CITY OF
COLORADO SPRINGS, in its capacity as
a governmental entity and as the
employer of Officers Worstell and
Calkins and the Colorado Springs Police
Department,

        Defendants - Appellants,

and

COLORADO SPRINGS POLICE
DEPARTMENT, in its capacity as an
agent and/or independent contractor of
the City of Colorado Springs; JOHN
DOES 1-7, whose names and identities
are unknown, individually and in their
capacity as governmental officers or
employees, peace officers, and/or agents
of the Colorado Springs Police
Department and/or the City of Colorado
Springs; LISA PIEL,

No. 11-1327

D. Colorado

(D.C. No. 1:11-CV-00488-RPM)

Defendants.

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

---

## I. Introduction

On February 17, 2010, Mitchel Anderson was a passenger in a vehicle stopped by Officers B. Worstell and C. Calkins of the Colorado Springs Police Department. According to Anderson's complaint, after the officers arrested the driver of the vehicle for driving while intoxicated, and notwithstanding Anderson's extreme and apparent level of intoxication, the officers ordered him to leave the scene, taking no steps to take him into protective custody or otherwise ensure his safety. Later, while attempting to walk home, Anderson was struck by a vehicle and sustained serious injuries.[1] Anderson brought suit in the District of Colorado against Officers Worstell and Calkins, the Colorado Springs Police

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]Anderson died on September 3, 2011, during the pendency of this appeal. His daughter, Plaintiff-Appellee Nicholl Anderson, was substituted as his personal representative.

Department, and the City of Colorado Springs, as well as the driver of the vehicle which struck him. The complaint asserted violations of 42 U.S.C. § 1983 and various state tort theories for negligence, negligence per se, and willful and wanton conduct. The officers moved to dismiss, arguing they were entitled to qualified immunity for Anderson's § 1983 claim and that Anderson's state law claims were barred under the Colorado Governmental Immunity Act. The district court denied the motion. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court reverses.

## II. Background

The following facts are accepted as true for purposes of analyzing Anderson's complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). On the night of February 17, 2010, Anderson was one of two passengers in a vehicle driven by Daniel Clayton, with whom he and the other passenger had been drinking for several hours. The vehicle was stopped at around 8:50 pm by Officers Worstell and Calkins, who, after conducting an investigation, arrested Clayton for driving while intoxicated. At approximately 9:30 pm, the officers ordered Anderson to exit the vehicle and "take a walk." The officers thereafter impounded the vehicle. At the time Anderson was told to leave the scene, he was heavily intoxicated, confused, and disoriented. Because of his intoxication, while walking in what he believed to be the direction of his home, Anderson was struck by a vehicle while attempting to

cross the street. As a result, he sustained serious injuries, including 21 broken bones, coma, pain, psychosis, and severe mental incapacity. His injuries necessitated amputation of his left leg.

Anderson's complaint asserted ten claims for relief. Count 1 alleged Officers Worstell and Calkins deprived him of his due process rights under the Fourteenth Amendment in violation of 42 U.S.C. § 1983. Count 2 alleged the city and the police department were liable for the officers' alleged constitutional violations due to policies regarding the handling of intoxicated individuals and failure to properly train or supervise. Counts 3 and 4 asserted claims under 42 U.S.C. § 1981 and 1988. Counts 5, 6, and 7 asserted claims against Worstell and Calkins under state tort law for negligence, negligence per se, and willful and wanton conduct. Count 8 alleged the city and the police department were liable for the state law claims against Officers Worstell and Calkins under the theory of *respondeat superior*. Counts 9 and 10 asserted claims for negligence and negligence per se against the driver of the vehicle that struck Anderson.

The defendants moved to dismiss under Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6), arguing the complaint failed to state a claim upon which relief could be granted and the officers' actions were protected by qualified immunity and the Colorado Governmental Immunity Act (CGIA). The district court granted the motion as to Counts 2, 3, and 4. The court denied the motion as to Count 1 "because there are factual disputes with respect to the degree of intoxication and

the plaintiff's apparent danger to himself which preclude qualified immunity as the claim has been pleaded." As to the state law claims, Counts 5 through 8, the court held an evidentiary hearing to determine whether the plaintiff properly complied with the CGIA's notice of claim provisions. At the conclusion of the hearing, the court denied the motion to dismiss.

## III. Discussion

### A. Jurisdiction

Initially, Anderson argues this court lacks jurisdiction over the officers' appeal because the district court concluded there were unresolved issues of material fact regarding whether the officers knew or should have known he was intoxicated and posed a danger to himself or others when he was removed from the vehicle. This argument is unpersuasive. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Thus, this court has previously exercised jurisdiction over a denial of a motion to dismiss when the defendants raised qualified immunity as an affirmative defense. *See Brown v. Montoya*, 662 F.3d 1152, 1161–62 (10th Cir. 2011). "Even when the district court concludes issues of material fact exist, we have reviewed the legal question of whether a defendant's conduct, as alleged by the plaintiff, violates clearly established law." *Medina v. Cram*, 252 F.3d 1124,

1130 (10th Cir. 2001). Thus, the court has jurisdiction to determine whether qualified immunity protects the officers from suit based on the facts as pleaded in Anderson's complaint.

### B.    Qualified Immunity

This court reviews the district court's denial of a motion to dismiss based on qualified immunity *de novo*, accepting all well-pleaded factual allegations in the complaint as true and viewed in the light most favorable to the nonmoving party. *Brown*, 662 F.3d at 1162. "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). When evaluating a motion to dismiss based on qualified immunity, the court employs a two part test, considering (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant[s'] alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quotations omitted). The court has discretion to determine which prong to address first "in light of the circumstances in the particular case at hand." *Id.* at 236. For the law to be clearly established "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quotation omitted). The plaintiff bears the

burden to convince the court the law was clearly established.  *Hilliard v. City & Cnty. of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991).

In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 197 (1989), the Supreme Court held "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  This court has subsequently recognized two exceptions to this general rule, termed the "special relationship" exception and the "state-created danger" theory, respectively.  *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 923 (10th Cir. 2012).  "By definition, the special relationship theory necessarily only applies where a 'custodial relationship' exists between the victim and the State."  *Id.* at 923 n.10.  For a custodial relationship to exist "the State's exercise of control must so restrain an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs."  *Id.* (quotation and alteration omitted).  Examples of restraints which rise to this level are arrest, incarceration, institutionalization, or placement in involuntary foster care.  *Id.* at 923.  Thus, "the restraint of liberty necessary to invoke substantive due process protection under the special relationship exception requires state action involving force, the threat of force, or a show of authority, with the intent of exercising dominion and control over the person."  *Id.* at 924.  In the absence of a special relationship, "[t]he state-created danger theory is a means by which a state actor might be held liable for an act of

private violence . . . *provided* the danger the state actor created, or rendered the victim more vulnerable to, precipitated a deprivation of life, liberty, or property in the constitutional sense." *Id.* at 922.

The state-created danger theory is inapplicable, however, if the private conduct which causes harm is merely negligent. *Id.* at 928–30. "This is because the harm associated with a negligent act is never constitutionally cognizable under the Due Process Clause." *Id.* at 928. Thus, to make out a substantive due process violation under the state-created danger theory, the private party must act, at a minimum, with some degree of deliberateness. *Id.* "Reason dictates that if state actors are not answerable under § 1983 for their own negligent acts, they are not answerable under § 1983 where a private party's underlying negligent act is directly responsible for the harm." *Id.* at 929–30 (emphasis omitted).

A panel of this court has previously addressed a qualified immunity defense to a § 1983 claim which was substantially similar to Anderson's. *See Hilliard*, 930 F.2d at 1517–18. In *Hilliard*, police officers ejected a heavily intoxicated passenger from a vehicle which was impounded after its driver was arrested on suspicion of driving while intoxicated. *Id.* at 1517. The passenger was later robbed and sexually assaulted. *Id.* at 1518. She brought a § 1983 claim against the officers, alleging their failure to take her into protective custody pursuant to Colorado's Emergency Commitment Statute violated her rights to substantive due process under the Fourteenth Amendment. *Id.* at 1518. The panel concluded even

if a constitutional right was violated, it was not clearly established in the law at the time of the officers' actions. *Id.* at 1519.

Anderson points to no Supreme Court or Tenth Circuit authority subsequent to *Hilliard* which would indicate the due process rights he asserts were violated have become clearly established. To the contrary, *Gray* indicates it is highly unlikely the conduct which forms the basis of Anderson's complaint amounts to a constitutional violation. Anderson seeks to hold Officers Worstell and Calkins liable for the injuries he suffered when he was hit by a car driven by a private party. To do so, he relies on both the special relationship and state-created danger exception to the general rule that state actors are not liable for failing to protect a citizen from the acts of a private party. As the foregoing discussion of *Gray* makes clear, however, neither of these exceptions are applicable. The special relationship exception is inapplicable because at the time of his injuries, Anderson's liberty was not so restrained that he was unable to care for himself, nor was he under the dominion and control of the officers through a show of authority, force, or threat of force. *Gray*, 672 F.3d at 923–24. Rather, the gravamen of his complaint is that he was injured due to the officers' *failure* to place sufficient restraints on his liberty. The state-created danger exception is inapplicable because, as Anderson acknowledges on appeal, the complaint does not allege he was a victim of private violence. Rather, Anderson alleges he was injured due to the negligent acts of a third party.

Urging a contrary conclusion, Anderson cites language from Colorado's Emergency Commitment Statute, Colo. Rev. Stat. § 25-1-310(1)(a) (2009) (repealed and relocated to § 27-81-111(1)(a) (Apr. 29, 2010)), and regulations governing the Colorado Springs Police Department which he argues obligated the officers to take him into protective custody. It is difficult to discern the precise point Anderson seeks to raise with this argument from his briefing. That is, it is unclear if Anderson argues the statute somehow illustrates the right he claims was violated was clearly established or if he seeks to show the statute somehow created a protected liberty or property interest which was violated by the officers' conduct.[2] In either case, Anderson's argument is unpersuasive. The plaintiff in *Hilliard* also cited Colorado's Emergency Commitment Statute in an attempt to make out a violation of clearly established law. 930 F.2d at 1518. The panel concluded it was not clearly established at the time of the officers' conduct that the statute created a constitutionally protected liberty interest cognizable in a § 1983 action. *Id.* at 1519. Since *Hilliard*, the text of the Colorado Emergency Commitment Statute has remained substantially unchanged, *compare* Colo. Rev. Stat. § 25-1-310 (1991), *with* Colo. Rev. Stat. § 25-1-310 (2009), and Anderson has failed to identify any intervening authority clearly establishing a constitutional right arising from the statute. Thus, Anderson has failed to

---

[2]If the latter, Anderson's argument is very likely foreclosed by Supreme Court precedent. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 761–68 (2005).

demonstrate that a claimed violation of the Emergency Commitment Statute, by itself, constitutes a clearly established violation of his substantive due process rights under the Fourteenth Amendment.

It is unclear from its order denying the officers' motion to dismiss what the precise grounds were for the district court's ruling. While the court was correct to conclude there were disputed issues of fact as to Anderson's apparent level of intoxication and danger to himself at the time of the stop, it is unclear how such facts can be considered material in light of Anderson's burden to show a violation of clearly established law. As the foregoing discussion illustrates, Anderson has failed to carry this burden. The district court's denial of the officers' motion to dismiss Count 1 of Anderson's complaint was therefore error.

## IV. Conclusion

For the foregoing reasons, the district court's order denying the motion to dismiss Count 1 of Anderson's complaint is **reversed**. Having thus concluded all of Anderson's federal claims should have been dismissed, we decline to address the officers' second claim of error concerning Anderson's state tort claims. Instead, on remand, the district court should consider whether to dismiss those

-11-

claims without prejudice.  *See* 28 U.S.C. § 1367(c); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988).

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge
