FILED
United States Court of Appeals
Tenth Circuit

April 2, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FRANK LORD,

    Plaintiff - Appellant,

v.

JASON HALL, Colorado Springs
Police Officer; RICHARD HAYES,
Colorado Springs Police Officer;
UNKNOWN COLORADO SPRINGS
POLICE OFFICERS,

    Defendants - Appellees.

No. 12-1331
(D.C. No. 10-CV-02695-PAB-KLM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Circuit Judge, **KELLY** and **LUCERO**, Circuit Judges.

Plaintiff-Appellant Frank Lord filed this 42 U.S.C. § 1983 action alleging

that Defendants-Appellees Jason Hall and Richard Hayes, two officers with the

Colorado Springs Police Department, violated his Fourth Amendment rights to be

free from unlawful arrest and excessive force during an investigatory stop. Mr.

Lord also asserted a claim for assault and battery under Colorado state law. He

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

now appeals the district court's grant of summary judgment in favor of Officers Hall and Hayes on the basis of qualified immunity. See Lord v. Hall, No. 10-cv-02695-PAB-KLM, 2012 WL 3129188 (D. Colo. July 31, 2012). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the grant of summary judgment on the federal actions, but reverse on the state action and remand to the district court with instructions to dismiss the state-law claim without prejudice.

## Background

The case arises from an unfortunate set of facts. We present the facts that are undisputed, pausing to note that Mr. Lord is unable to dispute many of these facts due to the injuries he sustained from the events in question. Nonetheless, we view these facts in the light most favorable to the nonmoving party, Mr. Lord. See Storey v. Taylor, 696 F.3d 987, 990 n.1 (10th Cir. 2012).

On July 26, 2010, a little before 10 p.m., Mr. Lord was driving home from Colorado Springs, Colorado, when he saw flashing lights in his rearview mirror. J. App. 24, 134. He pulled his vehicle, a white Ford pickup truck, to the side of 19th Street and waited for the emergency vehicle to pass. Id. Instead, Officers Jason Hall and Richard Hayes pulled their patrol car behind Mr. Lord and directed their spotlight at his truck. Id. at 25. Mr. Lord had no idea of this fact, but his truck matched the description of a truck involved in the armed robbery of

a Western Convenience Store that had just taken place a few blocks away.[1]  Id.

Officers Hall and Hayes learned over their car radio and call screen that a "white male, twenty-two years old, five-foot-six, thin build" had robbed a convenience store.  Id. at 46; Docket No. 48 (Dispatch Recording at 2:20–2:25).  Reports indicated that "a person jumped into a white ford pickup truck, one driver one suspect, . . . the suspect had a black enforced semi-automatic handgun."  J. App. 47; Docket No. 48 (Dispatch Recording at 3:00–3:13).  The vehicle "was last seen westbound on Armstrong" and was "a single cab long bed, older pickup truck, probably ten to fifteen years old, full-size American."  J. App. 47; Docket No. 48 (Dispatch Recording at 3:24–3:40).  Officers Hall and Hayes were en route to the crime scene when they noticed Mr. Lord's truck, and suspecting the vehicle was involved in the robbery, initiated the traffic stop.  J. App. 24–25.

Mr. Lord, a six-foot-four white male who was sixty-four years old at the time, exited his truck.  Id. at 129.  This is the last thing he remembers.  Id. at 25.  According to the officers, Mr. Lord immediately approached them and made statements such as "What's your god damn problem?", "What the hell do you guys want?", and "Can I go now?"  Id.  Officer Hall shouted to Mr. Lord to stop, stay there, and not move.  Id.  Mr. Lord turned around and went back to his truck

---

[1]  Mr. Lord disputes that his truck matched the description of the truck from the robbery.  J. App. 127.  According to Mr. Lord, his truck is a crew cab, while the truck in question was a single cab.  Id.  Because Mr. Lord does not challenge the initial stop, we find this dispute immaterial.

where he paced back and forth before turning to face the officers. Id. at 26. At this point, Mr. Lord attempted to re-enter his truck. Id. Fearing that Mr. Lord might grab a weapon or flee, Officer Hall grabbed Mr. Lord's arms from behind and pulled him away from the truck. Id. Mr. Lord broke Officer Hall's grip and began to raise his hand. Id. To defend himself, Officer Hall put his right hand up to Mr. Lord's chin, grabbed Mr. Lord's left arm, and attempted a leg sweep to bring Mr. Lord down. Id. at 27. Officer Hall finally pushed Mr. Lord into the back of the truck and took him to the ground. Id.

Meanwhile, Officer Hayes investigated whether there was a passenger in the truck, a fact that would confirm the officers' belief that two men were involved in the robbery. Id. at 24, 27. He approached the truck and saw it was empty. Id. at 28. By this point, however, Officer Hall was struggling with Mr. Lord. Id. Officer Hall put his knees on Mr. Lord's back and grabbed his right arm, while Officer Hayes tried to grab his left arm. Id. Officer Hayes ordered Mr. Lord to stop resisting. Id. Officer Hayes struck Mr. Lord four times in the shoulder and head area.[2] Id. at 130. The officers finally were able to handcuff Mr. Lord. Id. at 29.

Immediately thereafter, Officer Juan Ramos, the first officer to arrive at the

---

[2] Officer Hayes denies striking Mr. Lord in the head. Officer Hall's testimony indicates that he did. See J. App. 162. Viewing the evidence in Mr. Lord's favor, we adopt Mr. Lord's version of events.

scene of the robbery, pulled up beside the officers, requested medical assistance for Mr. Lord, and indicated that Mr. Lord was not their suspect. Id. at 131. Officer Craig Calkins administered a sobriety test to Mr. Lord, which he passed, and noticed an "abrasion of some kind on the side of his head." Id. at 131–32. Mr. Lord was arrested for obstruction of a peace officer in violation of Colorado Revised Statute § 18-8-104(1)(a). Id. at 29. The charge was ultimately dismissed. Id. at 11.

There was one witness, Daniel Hensley, who observed the traffic stop from his residence. Id. at 132. Mr. Hensley walked outside and saw the officers on top of Mr. Lord. Id. He heard one of the officers yelling "[w]here's the gun, Where's the gun?" to which Mr. Lord responded "I don't have a gun." Id. According to Mr. Hensley, Mr. Lord complied with the officers' orders. Id. at 133. Mr. Hensley did not see the events prior to this point. Id. at 262.

On November 2, 2010, Mr. Lord filed the instant action against Officers Hall and Hayes. Id. at 7–14. Mr. Lord alleges that he suffered "sever[e] and permanent injuries, including but not limited to his head, back, forearm, hand, severe mental trauma and distress, ribs, face, and a closed head injury." Id. at 11. He claims to have a permanent brain injury. Id. at 133. The officers moved for summary judgment on the basis of qualified immunity. Id. at 22–42. To defeat the motion, Mr. Lord submitted affidavits on his peaceful character and sought a presumption that he exercised due care during the incident. Id. at 127. The

district court refused the presumption and granted the motion for summary judgment.  Lord, 2012 WL 3129188, at *10, 12.  Mr. Lord timely appealed.

## Discussion

We review a grant of summary judgment on qualified immunity grounds de novo, applying the same standard as the district court.  J.W. ex rel. A.W. v. Utah, 647 F.3d 1006, 1009 (10th Cir. 2011).  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Thomas v. Durastanti, 607 F.3d 655, 661 n.4 (10th Cir. 2010) (quotation omitted).  "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."  Morris v. Noe, 672 F.3d 1185, 1191 (10th Cir. 2012) (quotation omitted).  We may address either prong first.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

I.       Unlawful Seizure and Arrest

Mr. Lord challenges the investigatory stop and eventual arrest as violating his Fourth Amendment rights.  Aplt. Br. 34–51.  He concedes the officers were justified in pulling him over, but argues all suspicion evaporated once he exited his truck and the officers saw that he did not match the suspect's description.  Id. at 41.  We disagree.

"An investigative detention, also called a Terry stop, is an encounter in which police may 'stop and briefly detain a person for investigative purposes.'" Morris, 672 F.3d at 1191 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).  An officer must have "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot[.]'" Id. (quoting Sokolow, 490 U.S. at 7).  We look to "the totality of the circumstances" and "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions."  United States v. Karam, 496 F.3d 1157, 1162 (10th Cir. 2007) (quotations omitted).  A Terry stop must cease once the officer's suspicion is dispelled.  United States v. Winder, 557 F.3d 1129, 1134 (10th Cir. 2009).

The qualified immunity standard allows for mistaken judgments based upon a mistake of fact, mistake of law or a mistake based upon a combination of the two, so long as the mistake is objectively reasonable.  Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009); Karam, 494 F.3d at 1164. From the police dispatch, the officers reasonably believed that two individuals

were involved in the robbery.  Thus, reasonable suspicion did not evaporate when Mr. Lord exited his truck and it was apparent that he did not match the suspect's description.  See Karam, 496 F.3d at 1164.  Officer Hall also noted that Mr. Lord was behaving strangely.  See id. at 1162.  In response, Mr. Lord suggests that this suspicion evaporated once Officer Hayes saw the truck was empty.  Aplt. Br. 44.  This may be true, but by that point, Mr. Lord was already resisting Officer Hall, thus providing justification for the seizure.

The officers also had probable cause to arrest Mr. Lord.  "Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested." Morris, 672 F.3d at 1192 (quotation omitted).  Mr. Lord was arrested for violating § 18-8-104(1)(a), Colo. Rev. Stat., which provides that "[a] person commits obstructing a peace officer . . . when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer."  Mr. Lord was uncooperative; he refused to stay put, tried to re-enter his truck, and resisted Officer Hall's attempts to control him. This lack of cooperation escalated into probable cause to believe Mr. Lord was interfering with an armed robbery investigation.

In response, Mr. Lord contends that, at most, he had disobeyed commands

when Officer Hall tackled him. Aplt. Br. 46–47. He cites Kaufman v. Higgs, 697 F.3d 1297 (10th Cir. 2012), for the proposition that refusing to obey commands is insufficient to arrest under the statute. We find Kaufman distinguishable; there the suspect refused to answer questions, see id. at 1302, here Mr. Lord disobeyed orders, resisted attempts to be handcuffed, and struggled with the officers on the ground.[3] Thus, we find Mr. Lord's actions provided probable cause to arrest.

II.     Excessive Force

We next turn to Mr. Lord's excessive force claim. The Fourth Amendment's "objective reasonableness" standard guides our inquiry. Morris, 672 F.3d at 1195. We ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). Here, we consider: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to flee. Id. at 396; see Morris, 672 F.3d at 1195–96.

These factors weigh in the officers' favor. First, the officers were investigating an aggravated robbery, a Class 3 felony, with ostensibly two persons

---

[3] Mr. Lord claims he was "arrested" when Officer Hall first made contact with his body. We disagree. An officer may takedown a suspect during a Terry stop based upon a mistaken, but objectively reasonable, immediate fear about safety. See Morris v. Noe, 672 F.3d 1185, 1192 (10th Cir. 2012).

involved, when they stopped Mr. Lord. See Colo. Rev. Stat. § 18-4-302(3).

These facts, coupled with the officers' knowledge that one of the suspects had used a weapon during the offense, indicate that the crime was severe. Second, the officers reasonably believed Mr. Lord posed an immediate threat to their safety when he exited his truck at night, verbally pushed back, ignored a command to not move, and walked towards them. See Novitsky v. City of Aurora, 491 F.3d 1244, 1254 (10th Cir. 2007) (officers may use force to "protect their personal safety"). Third, the officers reasonably perceived Mr. Lord was resisting arrest when he tried to re-enter his truck.

We find Casey v. City of Fed. Heights, 509 F.3d 1278 (10th Cir. 2007), a case Mr. Lord cites, readily distinguishable. See Aplt. Br. 18–19. In Casey, we reversed a district court's grant of qualified immunity where officers accosted a man on his way back to a courthouse. 509 F.3d at 1280, 1287. Unlike Mr. Lord, the plaintiff in Casey was being investigated for a misdemeanor, eyewitnesses confirmed the plaintiff was non-violent, and rather than resisting arrest, the plaintiff was walking towards the courthouse. Id. at 1281–82. Therefore, Casey does not weigh in Mr. Lord's favor.

On appeal, Mr. Lord argues the district court failed to read the facts in the light most favorable to him. Aplt. Br. 16–23. He focuses on the time line of events, which according to Mr. Lord, casts doubts on the officers' recollection of

the night. Id. He argues that 46 seconds after the officers reported pulling up behind Mr. Lord's truck, Officer Ramos drove by and Mr. Lord was on the ground. Id. at 21–22. He further argues that witness Mr. Hensley testified that Mr. Lord was fully compliant with the officers once taken down and arrested. Id. at 22. These facts, however, do not create a genuine issue of material fact about the events which preceded them. Mr. Lord is unable to raise a genuine issue of material fact primarily because he has no memory of what happened. In response, Mr. Lord asks for a presumption of due care, citing the affidavits he submitted on his peaceful character. Aplt. Br. 23–27. However, as the district court found, these affidavits are too speculative to raise a genuine issue of material fact. Lord, 2012 WL 3129188, at *10.

Mr. Lord also argues the officers acted unreasonably in creating the need to use force, citing our decision in Allen v. Muskogee, 119 F.3d 837 (10th Cir. 1997). Aplt. Br. 28–31. While it is correct, as we recognized in Allen, that officer conduct prior to the use of force may be included in the reasonableness inquiry, Allen is distinguishable. In Allen, we identified a dispute of material fact as to the officers' pre-use of force conduct. 119 F.3d at 841. Mr. Lord has failed to raise such an issue of fact. Moreover, there is no indication the defendants in Allen raised a qualified immunity defense, which means the summary judgment motion was judged under the typical standard, which required

a lesser showing by the plaintiff. <u>Medina v. Cram</u>, 252 F.3d 1124, 1132–33 (10th Cir. 2001).

We also reject Mr. Lord's claim that the officers' conduct did not conform to police procedures, and that the officers should have conducted a felony stop instead. Aplt. Br. 30–31. Here, Mr. Lord introduced expert affidavits of former Police Commander Roger Willard and Chief of Police Dan Corsentino, both of whom opined that the officers should have acted differently. J. App. 173–77, 243–51. However, as we explained in <u>Medina</u>, these expert opinions are largely irrelevant for they ask us to review the officers' conduct "from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene." 252 F.3d at 1133. We do note that perhaps the officers could have behaved differently to avoid injuring an innocent man, but qualified immunity allows for all but unreasonable mistakes.

III.    <u>State-Law Claim for Assault and Battery</u>

Mr. Lord finally argues the district court erred in dismissing his state-law claim for assault and battery. Aplt. Br. 52–54. The district court granted summary judgment, and in doing so, dismissed this claim with prejudice. The state-law claim should have been dismissed without prejudice. <u>See</u> <u>Brooks v. Gaenzle</u>, 614 F.3d 1213, 1229–30 (10th Cir. 2010) (where federal claims are dismissed before trial, district court should decline jurisdiction over state-law

claims and dismiss them without prejudice).  Therefore, we remand to the district court with instructions to dismiss the state-law claim without prejudice.

The judgment of the district court is AFFIRMED as to the Fourth Amendment claims.  The case is REMANDED to the district court with instructions to vacate its judgment and re-enter judgment dismissing the state-law claim without prejudice.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge