**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 29, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DR. LESLIE HANNAH,

    Plaintiff – Appellee,

v.

DR. BRIAN COWLISHAW; DR. DONNA
SHELTON; DR. D. AUDELL
SHELBURNE; DR. PHILLIP
BRIDGMON; DR. STEVE TURNER;
DR. WILLIAM RUGG,

    Defendants - Appellants,

and

NORTHEASTERN STATE
UNIVERSITY,

    Defendant.

No. 15-7009
(D.C. No. 6:14-CV-00074-RAW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **GORSUCH**, and **McHUGH**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Defendants-Appellants are professors and administrators at Northeastern State University (NSU) who were sued by Dr. Leslie Hannah for racial discrimination. They interlocutorily appeal from a district court order that denied their assertion of qualified immunity on Mr. Hannah's 42 U.S.C. § 1981 claim. Exercising limited jurisdiction,[1] we reverse and remand.

## BACKGROUND

In 2009, NSU hired Dr. Hannah, a Native American, as an associate professor in its Languages and Literature Department. He was soon appointed chair of the department.

His appointment, however, was not without controversy. Several of the Defendants-Appellants made disparaging comments about Dr. Hannah on a social-media website. Dr. Hannah reported the comments to NSU, which reprimanded Dr. Brian Cowlishaw, Dr. Bridget Cowlishaw, and Dr. Donna Shelton. But that did not stop the offensive social-media posts, and Dr. Hannah eventually resigned as department chair.

In 2012, Dr. Hannah applied for tenure. The tenure committee, which included Dr. Brian Cowlishaw and Dr. Shelton, split evenly on the tenure vote, with one member abstaining. Dr. Hannah's application was then forwarded to the dean, Dr. Phillip

---

[1] This court has jurisdiction over an interlocutory appeal from the district court's denial of qualified immunity only to the extent that the denial rests on issues of law. *See Johnson v. Jones*, 515 U.S. 304, 311 (1995). In other words, "if a defendant's appeal of the denial of qualified immunity is based on the argument that, even under the plaintiff's version of the facts, the defendant did not violate clearly established law, then the district court's ruling is immediately appealable." *Hatheway v. Thies*, 335 F.3d 1199, 1204 (10th Cir. 2003) (alteration and internal quotation marks omitted).

Bridgmon, who declined to support it, claiming that Dr. Hannah had "polarized his department" and "engaged in behaviors that are unsettling . . . and distracting." Aplt. App., Vol. I at 81. The provost, Dr. William Rugg, and the president, Dr. Steve Turner, concurred in the denial of tenure. Shortly thereafter, NSU placed Dr. Hannah on paid administrative leave for the remainder of his contract.

In 2014, Dr. Hannah filed suit in state court, claiming that the denial of tenure was racially motivated. Defendants-Appellants removed the case to federal court, where Dr. Hannah filed an amended complaint. Therein, he asserted claims under Title VII, 42 U.S.C. § 1981, the Oklahoma Constitution, and common-law theories of negligence, tortious interference with contract, and breach of contract.

Defendants-Appellants sought summary judgment on all of Dr. Hannah's claims. Regarding the § 1981 claim, the defendant administrators and professors raised qualified immunity. The district court rejected that defense, reasoning that because Dr. Hannah's Title VII claim against NSU would survive summary judgment, so must the § 1981 claim against the individual defendants.[2] This appeal followed.

## DISCUSSION

## I. Standards of Review

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Morris v. Noe*, 672 F.3d 1185, 1191

---

[2] The district court also denied summary judgment as to the common-law claims against the individual defendants.

3

(10th Cir. 2012) (internal quotation marks omitted). "[W]e review de novo the district court's denial of a summary judgment motion asserting qualified immunity." *Id.* at 1189 (internal quotation marks omitted).

## II. § 1981 Liability

Defendants-Appellants argue that "[t]he district court erred in imposing individual liability under § 1981 and the error was compounded by relying on Title VII theories of liability . . . ." Aplt. Opening Br. at 14. This argument has merit.

Section 1981 gives "[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts." 42 U.S.C. § 1981. It thus "prohibits not only racial discrimination [in the workplace] but also retaliation against those who oppose [discrimination]." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2529 (2013). Similarly, Title VII of the Civil Rights Act of 1964 provides a cause of action against employers who "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), or who retaliate against a person for opposing an unlawful employment practice, *id.* § 2000e-3(a).

But unlike Title VII, § 1981 does not provide a vehicle for remedying racial discrimination and retaliation in cases brought against state actors, *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 705, 735 (1989). Rather, § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Id.* at 735. Dr. Hannah does not contest

4

Defendants-Appellants' assertion that they are state actors. Nor does he identify any portion of the amended complaint predicated on § 1983. Instead, he attempts to avoid the implications of *Jett* on two grounds.

First, Dr. Hannah advances a jurisdictional challenge. He contends that on interlocutory review of a decision denying qualified immunity, we may review only "the district court's legal determination that certain alleged actions violate clearly established law," Aplee. Br. at 13 (internal quotation marks omitted), and not whether he is "entitle[d] to bring a § 1981 claim against" Defendants-Appellants, *id.* at 14. But the Supreme Court rejected a similar argument in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In that case, the plaintiff argued that "a qualified immunity appeal based solely on the complaint's failure to state a claim, and not on the ultimate issues relevant to the qualified immunity defense itself, is not a proper subject of interlocutory jurisdiction." *Id.* at 672 (internal quotation marks omitted). The Supreme Court disagreed, explaining that "the sufficiency of [the plaintiff's] pleadings is both inextricably intertwined with and directly implicated by the qualified immunity defense." *Id.* at 673 (citations and internal quotation marks omitted).

Although *Iqbal* involved a sufficiency challenge to "the facts pleaded" in the complaint, *id.*, various Courts of Appeals have applied *Iqbal*'s jurisdictional teachings to claims for relief that are insufficient as a purely legal matter, *see, e.g.*, *Bosarge v. Miss. Bur. of Narcotics*, 796 F.3d 435, 439, 441 (5th Cir. 2015) (determining on interlocutory appeal from denial of immunity that plaintiff's claim for malicious prosecution was foreclosed by circuit precedent); *Drimal v. Tai*, 786 F.3d 219, 223, 224 (2d Cir. 2015)

5

(concluding on interlocutory appeal from denial of immunity that claim for unlawfully intercepting phone calls lacked necessary element).  Indeed, it has long been recognized that interlocutory decisions denying qualified immunity are appealable "to the extent [the appeal] turns on an issue of law."  *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  Therefore, whether Mr. Hannah has plead a legally sufficient § 1981 claim is encompassed within this court's interlocutory jurisdiction over the denial of qualified immunity.

We now turn to Mr. Hannah's second ground for overlooking *Jett*.  He maintains that *Jett* was nullified by the Civil Rights Act of 1991, and thus, he may proceed against the "individual [defendants] independent of § 1983."  Aplee. Br. at 15.  This court has held, however, that *Jett* was unaffected by that legislation.  *See Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006) ("conclud[ing] that even after the 1991 amendments to § 1981, damages claims against state actors for § 1981 violations must be brought under § 1983"); *accord Brown v. Sessoms*, 774 F.3d 1016, 1021 (D.C. Cir. 2014) (noting that all Circuits except the Ninth recognize *Jett*'s continued viability).  Dr. Hannah does not acknowledge *Bolden*.

Because Dr. Hannah's § 1981 claim contravenes *Jett*, the district court should have dismissed that claim.  We therefore reverse and remand this case to the district court for further proceedings, which  should  include providing Dr. Hannah the opportunity to amend his complaint to comply with *Jett* by pleading a § 1983 claim.  *See Bolden*, 441 F.3d at 1137 (remanding so the plaintiff could seek leave to amend to cure his complaint's *Jett* violation).

6

Defendants-Appellants also challenge Dr. Hannah's § 1981 claim for failing to allege actions by each defendant that violated a clearly established constitutional right. If Dr. Hannah takes advantage of the opportunity to amend his complaint on remand to comply with *Jett* , it is likely the Defendants-Appellants will again claim qualified immunity. We therefore pause to provide guidance to the district court on the need to consider the actions of each defendant *individually* in assessing his entitlement to qualified immunity.

The district court's current summary judgment order does not provide such individualized analyses; rather, it denies qualified immunity "for the same reasons the court denied the motion . . . as to the Title VII claims against NSU." Aplt. App., Vol. VIII, at 1289. But the district court's Title VII analysis considered the conduct by all actors in combination to determine whether Dr. Hannah's Title VII claims for discrimination, retaliation and hostile work environment against NSU could survive summary judgment. In contrast, Defendants-Appellants' liability and their "entitlement to qualified immunity[ ] turn on an individual assessment of each defendant's conduct and culpability." *Pahls v. Thomas*, 718 F.3d 1210, 1233 (10th Cir. 2013); *accord Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 570 (6th Cir. 2013) ("[Q]ualified immunity must be assessed in the context of each individual's specific conduct."); *cf. Quinn v. Young*, 780 F.3d 998, 1017 (10th Cir. 2015) (remanding where the district court "did not articulate its rationale for denying the Officers qualified immunity"); *Handt v. Lynch*, 681 F.3d 939, 945 (8th Cir. 2012) (remanding for the district court to "analyze whether the facts pertaining to each defendant" show entitlement to qualified immunity).

For example, in the current amended complaint,[3] Dr. Hannah alleges  his § 1981 rights were violated because "[t]he defendants unfairly treated and ultimately derailed [his] tenure track, at least in part because of his race."  Aplt. App., Vol. I at 17.[4]  It is clearly established that "employment discrimination on the basis of race" is forbidden by § 1981.  *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1244 (10th Cir. 2000); *see, e.g.*, *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 606, 613 (1987) (denial of tenure).  Thus, the district court's task in assessing the Defendants-Appellants' qualified immunity defenses was to "determine which facts a jury could reasonably find from the evidence" and whether those facts "suffice to show a . . . violation" of § 1981 as to each of the Defendants-Appellants.  *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 753 (10th Cir. 2013) (internal quotation marks omitted).  This analysis mandates a defendant-by-defendant inquiry that matches the allegations with the individual actor.  Thus, it cannot be predicated on a conclusion that a reasonable jury could find NSU liable under Title VII based on the combined actions of the individual actors.

## CONCLUSION

Because Dr. Hannah's § 1981 claim in his first amended complaint fails to state a claim for relief, we reverse the district court's judgment and remand with instructions to

---

[3] Dr. Hannah may include new factual allegations in an amended complaint properly asserting a § 1983 claim and nothing in this decision is intended to usurp the district court's role in assessing the legal sufficiency of those allegations in the first instance.

[4] Dr. Hannah conceded in the district court that NSU enjoys Eleventh Amendment immunity against § 1981 liability.  Aplt. App., Vol. V at 360.

dismiss that claim and to provide Dr. Hannah the opportunity to amend the complaint to add a § 1983 claim premised on an alleged violation of his § 1981 rights.

Entered for the Court


Carolyn B. McHugh
Circuit Judge