**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

REUBIN E. LACAZE, JR.,

    Plaintiff - Appellee,

v.

WADE GOURLEY,

    Defendant - Appellant,

and

THE CITY OF OKLAHOMA CITY; BILL
WEAVER; VANCE ALLEN; DOUG
KIMBERLIN,

    Defendants.

No. 24-6075
(D.C. No. 5:20-CV-01281-G)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **EID**, and **FEDERICO**, Circuit Judges.
_____

Wade Gourley appeals the district court's order denying his motion for

summary judgment asserting qualified immunity. To the extent he presents

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

arguments properly raised in an interlocutory appeal of the denial of qualified immunity, we exercise jurisdiction under 28 U.S.C. § 1291, reject those arguments, and affirm the district court's order.[1]

## I.  Background

Plaintiff Reubin Lacaze is an African-American who has been an officer in the Oklahoma City Police Department ("OCPD") since 1993.  In 2019, OCPD's Chief of Police, Wade Gourley, terminated Lacaze's employment for falsifying a police report and misleading supervisors regarding the alleged loss of a small quantity of an unknown substance confiscated during an arrest that was thought to be methamphetamine.  Lacaze successfully arbitrated his termination and was reinstated. He then sued Gourley, three other officers, and Oklahoma City, alleging they had discriminated against him in violation of Title VII and 42 U.S.C. § 1981.

The district court granted summary judgment on all claims except Lacaze's § 1981 claim of racial discrimination against Gourley.[2]  As to that claim, the court denied Gourley's request for qualified immunity.  The court concluded there was a disputed issue of material fact at the pretext stage of the *McDonnell Douglas*

---

[1] Plaintiff's counsel passed away shortly after this appeal was docketed. Although plaintiff never retained new counsel for this appeal, appeared pro se, or filed a brief, that does not prevent us from considering the merits of Gourley's appeal.  *See* Fed. R. App. P. 31(c) (listing, as the only consequence of an appellee's failure to file a brief, that the appellee "will not be heard at oral argument unless the court grants permission").

[2] Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ."

analysis[3]—whether two proposed comparators were similarly situated to Lacaze but received lesser punishment because they were white—and therefore a disputed fact question whether Gourley's termination of Lacaze violated a constitutional right. The court also concluded that "[i]t is clearly established that employment discrimination on the basis of race is forbidden by § 1981."  App. vol. II at 149[4] (internal quotation marks omitted).  Gourley has taken this interlocutory appeal.

## II.  Discussion

### A.    Interlocutory appellate jurisdiction

We have appellate jurisdiction to review "all final decisions of the district courts of the United States."  28 U.S.C. § 1291. "Orders denying summary judgment are ordinarily not appealable final decisions for purposes of § 1291." *Simpson v. Little*, 16 F.4th 1353, 1359 (10th Cir. 2021) (brackets, ellipsis, and internal quotation marks omitted).  "But under the collateral order doctrine, final (and therefore appealable) decisions include decisions that are conclusive on the question decided,

---

[3] In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court created a three-step framework for analyzing whether circumstantial evidence is sufficient to allow a plaintiff to show an employer acted with a discriminatory motive.  First, a plaintiff must "establish[] a prima facie case of racial discrimination." *Id.* at 802.  If the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the [employment action]." *Id.*  If the defendant carries that burden, then the plaintiff must have an "opportunity to show that [the employer's] stated reason for [the employment action] was in fact pretext [for unlawful discrimination]." *Id.* at 804.  A § 1981 plaintiff may rely on the *McDonnell Douglas* framework. *Parker Excavating, Inc. v. LaFarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017).

[4] We cite to the pdf page numbers of Gourley's appendix because he did not use consecutive page numbering.

resolve important questions separate from the merits, and are effectively unreviewable if not addressed through an interlocutory appeal." *Id.* (ellipsis and internal quotation marks omitted). "The denial of qualified immunity to a public official is therefore immediately appealable under the collateral order doctrine to the extent it involves abstract issues of law." *Id.* (internal quotation marks omitted).

When a defendant raises a qualified immunity defense at summary judgment, "the plaintiff must (1) raise a genuine issue of material fact that the defendant violated a federal constitutional or statutory right, and (2) show the right was clearly established at the time of the defendant's violative conduct." *Id.* (internal quotation marks omitted). "[W]hether the law was clearly established at the time of the alleged violation" is an abstract issue of law we have jurisdiction to review in an interlocutory appeal. *Id.* at 1359–60. But in an interlocutory appeal from the denial of qualified immunity, we generally "lack jurisdiction . . . to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Id.* at 1360 (brackets and internal quotation marks omitted). Thus, "[t]he district court's factual findings and reasonable assumptions comprise the universe of facts upon which we base our legal review of whether defendants are entitled to qualified immunity." *Id.* (internal quotation marks omitted). As Gourley notes, however, we may review the record de novo when (1) "the version of events the district court holds a reasonable jury could credit is blatantly contradicted by the

4

record" or (2) "the district court commits legal error en route to a factual determination." *Id.* (emphasis and internal quotation marks omitted).

## B.    Standard of review

"Within this court's limited jurisdiction, we review the district court's denial of a summary judgment motion asserting qualified immunity de novo." *Id.* (internal quotation marks omitted).  In doing so, we apply the same standard that governed the district court. *Id.*  Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We view "the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party."  *Simpson*, 16 F.4th at 1360 (internal quotation marks omitted).

## C.    Gourley's arguments

One of the comparators in this case is Officer Brewer.  The district court concluded a reasonable factfinder could infer the department's given reasons for terminating Lacaze were pretextual from evidence showing Brewer (who is white) was disciplined less severely for analogous misconduct.  Gourley argues that Brewer was not a similarly situated comparator because Gourley never supervised Lacaze or Brewer, and that he was not Chief when the investigations into Lacaze or Brewer began.  From this he concludes that the district "court apparently concluded that because both decisions were made by Gourley, in his first year as Chief of Police," he must have discriminated based on race. Br. at 21.  This argument might be construed as an assertion that the district court employed an incorrect standard when

5

it determined that both Lacaze and Brewer "shared the same decisionmaker," App. vol. II at 147, and thus committed a "legal error en route to a factual determination," *Simpson*, 16 F.4th at 1360 (emphasis and internal quotation marks omitted). But a shared supervisor is not a comparator requirement; it is sufficient if the plaintiff and the comparator shared the same decision-maker. *See Ibrahim v. All. For Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021) ("Employees are similarly situated when they share a supervisor *or decision-maker*, must follow the same standards, and engage in comparable conduct." (emphasis added)). And it is undisputed that after he became Chief, Gourley made the final decisions to discipline Brewer and to terminate Lacaze. Thus, contrary to Gourley's argument, the district court did not employ an incorrect legal standard.

Gourley also draws a factual distinction between Lacaze's alleged misconduct and Brewer's misconduct, asserting he believed that Lacaze's was more serious, and therefore it was "presumptuous at best" for the district court "to conclude that he acted because of racial bias." Br. at 22. This argument, however, rests on Gourley's view of the facts, not on accepting as true the district court's universe of facts and its conclusion that when viewed in Lacaze's favor, the evidence was sufficient for a reasonable jury to find that Brewer and Lacaze were similarly situated. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) ("[W]hether two employees are similarly situated ordinarily presents a question of fact for the jury." (internal quotation marks omitted)). Nor can his argument show that "the version of events the district court [held] a reasonable jury could credit is blatantly contradicted

6

by the record." *Simpson*, 16 F.4th at 1360 (internal quotation marks omitted). The "blatant contradiction" exception, which derives from *Scott v. Harris*, 550 U.S. 372, 380–81 (2007), is narrow, typically limited "to cases involving objective documentary evidence, such as video recordings or photographs." *Vette v. K–9 Unit Deputy Sanders*, 989 F.3d 1154, 1164 (10th Cir. 2021). The exception does not apply in cases like this one, "where the source of the contradictory testimony is the defendant himself." *Id.* at 1165.

The other comparator is Detective Carter. Oklahoma County District Attorney David Prater publicly accused Carter of perjury in a sworn probable-cause affidavit that resulted in the filing of criminal charges. Gourley directed the OCPD's Internal Affairs unit to investigate the accusation. Gourley contends that Carter and Lacaze are not similarly situated because (1) the Internal Affairs unit concluded that the charge against Carter was unsubstantiated, and there is no evidence that Gourley controlled that conclusion; and (2) the Oklahoma Attorney General and the Oklahoma State Bureau of Investigation are still investigating Carter's conduct.

These arguments contest the district court's conclusion that there is a genuine issue of material fact whether Carter was similarly situated to Lacaze but not disciplined because Carter is white. The district court's conclusion apparently rests on an email Prater sent to Gourley after Carter was cleared, inquiring "how the matter was investigated without contacting me[?]" App. vol. II at 96. Lacaze relied on that email in his response to Gourley's motion for summary judgment, arguing that the investigation was unfair and "bogus" because no one interviewed Prater or

anyone from his office, and the investigation was completed in just 90 days. *Id.* at 45–46; *see also id.* at 54 (arguing that "[t]he jury can find that this type of sham investigation shows . . . preferential treatment to white officers accused of untruthfulness"). Because Gourley's arguments target the district court's factual conclusion that Lacaze had provided sufficient evidence for a reasonable jury to find that he and Carter were similarly situated, we lack jurisdiction to review those arguments.

Gourley faults the district court's reliance on *Ibrahim* and *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220 (10th Cir. 2000). These arguments might appear to implicate the "legal error en route to a factual determination" exception that allows us to review the record de novo. But a closer look reveals that the arguments raise challenges to the district court's factual conclusion that there is a dispute of material fact regarding whether the comparators are similarly situated to Lacaze.

Gourley first attempts to factually distinguish *Ibrahim* from this case. The district court, however, relied on *Ibrahim* only for general statements of the law, not as a factually analogous case supporting the denial of qualified immunity. *See* App. vol. II at 142–43, 147, 149. Thus, any factual distinctions between *Ibrahim* and this case are irrelevant. But even if the factual distinctions were relevant, this court would lack interlocutory jurisdiction to review Gourley's argument that, based on *Ibrahim*, the district court erred in concluding there is a disputed issue of material

8

fact that Brewer and Carter were situated similarly to Lacaze. *See Simpson*, 16 F.4th at 1360.

Gourley next accuses the district court of failing to apply two principles stated in *Kendrick*. The first principle is: "Differences in treatment that are trivial or accidental or explained by a nondiscriminatory motive will not sustain a claim of pretext." 220 F.3d at 1232. The second principle is: "[A] challenge of pretext requires us to look at the facts as they appear to the person making the decision to terminate [the] plaintiff," and "it is the manager's perception of the employee's performance, and not the employee's subjective evaluation of her performance, that is relevant in determining pretext." *Id.* at 1231. Gourley theorizes that if the district court had applied these principles, "there would be no triable question of fact arising from a 'pretext' determination." Br. at 25. He adds that in *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998), "the court determined [there is] no question of pretext where the employer believes the allegations of . . . misconduct to be true." Br. at 25.

Gourley's point seems to be that because (1) he claims it appeared to him that Lacaze's alleged misconduct warranted a more severe sanction than Brewer's alleged misconduct, and (2) Carter was cleared by the Internal Affairs unit, then (3) there can be no disputed issue of material fact that either one is a valid comparator. This again disputes the district court's conclusion that the evidence raises a genuine factual dispute that a jury must decide. Moreover, in assessing evidence of pretext at the summary judgment stage, application of either *Kendrick* principle does not mean the

9

court must *assume* the credibility or good faith of the decision-maker's asserted legitimate, nondiscriminatory reason for the adverse employment decision.  *See Officer v. Sedgwick Cnty.*, 226 F. App'x 783, 795 (10th Cir. 2007) (explaining that, at the pretext step, and with respect to an evaluation of comparators, "*so long as it is not tainted by impermissible animus*, 'it is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of her own relative performance'" (emphasis added) (brackets omitted) (quoting *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996)).[5]  The district court here found the comparator evidence sufficient to present a genuine dispute as to whether Gourley's stated explanations might be pretextual—i.e., that it might lead a reasonable jury to disbelieve his stated explanations and find they were a pretext for discrimination.  Whether or not we would agree with the district court's factual assessment of the evidence, we lack jurisdiction to review its ruling in this interlocutory appeal.

The other case Gourley cites, *McKnight*, supports this understanding of the *Penske* principles.  Gourley asserts that *McKnight* determined there was no disputed issue regarding pretext simply because "the employer believe[d] the allegations of [the plaintiff's] . . . misconduct to be true."  Br. at 25.  We disagree with this characterization of *McKnight*.  *McKnight* concluded that the plaintiff had "not shown at the time of his termination there was any dispute or a genuine issue concerning the

---

[5] We cite *Officer* only for its persuasive value  *See* 10th Cir. R. 32.1.

sincerity of defendants' proffered reason for his termination." 149 F.3d at 1129. The district court here determined that unlike the evidence in *McKnight*, Lacaze *had* raised a genuine issue for trial concerning the sincerity of Gourley's motives. Specifically, it determined that a reasonable jury could find he was similarly situated to the better-treated white comparators. And that determination puts at issue the credibility of Gourley's proffered legitimate, nondiscriminatory reason for terminating Lacaze's employment. We lack jurisdiction to review that determination in this interlocutory appeal.

Gourley cites another case, *Comcast Corp. v. National Association of African American-Owned Media*, 589 U.S. 327 (2020), which held that the tort principle requiring a plaintiff to "first plead and then prove that its injury would not have occurred 'but for' the defendant's unlawful conduct" applies to § 1981 claims, *id.* at 329. Gourley argues that "in light of" *Comcast Corp.*, "Lacaze has presented insufficient evidence to show a question of fact as to whether his race was the cause of his termination." Br. at 26. The district court, however, concluded that Lacaze had provided sufficient evidence for a jury to find that Gourley fired Lacaze due to racial animus, and we lack jurisdiction to review that conclusion in this interlocutory appeal.

Finally, Gourley summarily claims there is no "relevant law [that] was clearly established at the time of the subject event." Br. at 12. But he develops no challenge to the district court's conclusion that "'[i]t is clearly established that "employment discrimination on the basis of race" is forbidden by § 1981,'" App. vol. II at 149

11

(quoting *Hannah v. Cowlishaw*, 628 F. App'x 629, 633 (10th Cir. 2016), quoting *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1244 (10th Cir. 2000)).  He has therefore waived appellate review of that conclusion.  *See Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) ("An issue or argument insufficiently raised in the opening brief is deemed waived.").  In any event, we see no error in the district court's conclusion.  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Simpson*, 16 F.4th at 1367 (internal quotation marks omitted).  "General statements of the law are not inherently incapable of giving fair and clear warning to officers" provided that "in the light of pre-existing law the unlawfulness must be apparent." *Sanchez v. Guzman*, 105 F.4th 1285, 1293 (10th Cir. 2024) (brackets, emphasis, and internal quotation marks omitted), *cert. denied*, ___ S. Ct. ___, No. 24-463, 2025 WL 76459 (U.S. Jan. 13, 2025).  The case law the district court relied on is sufficiently clear for Gourley to have understood that discriminating against Lacaze on the basis of race was unlawful.

## III.  Conclusion

We lack interlocutory jurisdiction to consider most of Gourley's arguments, reject those over which we have such jurisdiction, and affirm the district court's order denying his motion for summary judgment.

Entered for the Court

Allison H. Eid
Circuit Judge

12